GENERAL MOTORS CORPORATION, Appellee,

v.

JOE O'BRIEN CHEVROLET, INC. et al., Appellants.

[Cite as *Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc.* (1997), 118 Ohio St.3d 470.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE06–779.

Decided Feb. 27, 1997.

*Jones, Day, Reavis & Pogue* and *Jeffrey J. Jones*; and *L. Joseph Lines III*, for appellee.

*Morganstern, MacAdams & DeVito, Stanley Morganstern, Christopher M. DeVito* and *Timothy L. McGarry*, for appellants.

*Butler, Cincione, Dicuccio, Dritz & Barnhart* and *Alphonse P. Cincione*, for intervenor-appellee.

*Whann & Associates, Keith E. Whann* and *Jay F. McKirahan*, for *amici curiae*, Ohio Automobile Dealers Association.

*Baker & Hostetler, George W. Hairston* and *Anthony J. Franze*, for *amici curiae* American Automobile Manufacturers Association and Association of International Automobile Manufacturers.

LAZARUS, Judge.

This matter is before this court upon the appeal of Joe O'Brien Chevrolet, Inc., and John P. O'Brien ("O'Brien") from the judgment of the Franklin County Court of Common Pleas reversing an administrative ruling of the Ohio Motor Vehicle Dealers Board ("board").

On July 29, 1994, and August 2, 1994, appellee, General Motors Corporation ("GMC"), notified O'Brien and other same-line dealers of its intention to relocate intervenor-appellee, Bass Chevrolet, Inc. ("Bass"), from its current location on Northfield Road in Warrensville Heights, Ohio, to 27100 Chagrin Boulevard in Orange Village, Ohio. The notices did not state specific grounds for the intended relocation. On August 10, 1994, O'Brien filed a protest with the board pursuant to R.C. 4715.50(A). In May 1995, an evidentiary hearing was held before a hearing examiner. The hearing examiner recommended that the proposed relocation be denied by the board on the grounds that GMC had not established good cause under R.C. 4517.51 to relocate the dealership and that GMC had failed to comply with the notice requirements of R.C. Chapter 4517. After receiving the proposed decision from the hearing examiner, the board failed to act within thirty days, and pursuant to R.C. 4517.58 the board's inaction resulted in the recommendation being approved.

GMC appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. That court reversed the decision of the board, finding that the board's order was not supported by substantial, reliable, and probative evidence and was not in accordance with law.

O'Brien has pursued an appeal to this court,[1] assigning seven errors for our consideration:

"1. This court lacks jurisdiction because the common pleas court decision is not final and appealable as Civil Rule 52 findings have not been made.

"2. The common pleas court lacked jurisdiction as the agency's order was not final and appealable pursuant to O.R.C. §§ 4517.58, 119.12 and 2505.02.

"3. Appellee, General Motors, gave inadequate notice pursuant to Ohio Revised Code § 4517.50.

---

1. Prior to oral argument this court was unable to locate the transcript of the hearing before the hearing examiner. After additional queries at oral argument as to whether the transcript had been provided to the court of common pleas, the parties submitted additional material regarding the transfer of the record. The clerk's office subsequently located the transcript and after consultation with the clerk's office this court is satisfied that the record was properly before the court.

"4. The common pleas court erred by applying the wrong burden of proof standard to appellee in violation of O.R.C. §§ 4517.51, 4517.57(C) and 4517.65(D).

"5. The common pleas court erred by failing to give deference to the administrative agency's resolution of evidentiary conflicts.

"6. The common pleas court abused its discretion by determining that the administrative agency's decision was not supported by reliable, probative and substantial evidence in accordance with law.

"7. The trial court erred by failing to consider appellants' motion to stay."

R.C. 4517.50 provides that no motor vehicle franchisor shall establish or relocate a dealership unless the board determines that there is "good cause" to do so. An existing dealer has a right to protest a relocation, but it is the manufacturer that has the burden to establish good cause for such a move. R.C. 4517.57(C) and 4517.65(D). R.C. 4517.51 provides a list of factors that the board is to take into consideration when determining whether good cause has been established to relocate an existing new motor vehicle dealership. The list, which is not exclusive, is as follows:

"(A) The effect of an additional or relocated dealer upon the existing new motor vehicle dealer of the same line-make in the relevant market area to be served by the additional franchisee or relocated dealer;

"(B) Whether it is injurious or beneficial to the public interest for the dealer to be established or relocated;

"(C) Whether the franchisees of the same line-make in the relevant market area are:

"(1) Providing adequate competition and convenient consumer care for the motor vehicles of the same line-make in the relevant market area, which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel;

"(2) Providing adequate market penetration and representation.

"(D) Whether the franchisor has complied with the requirements of this chapter."

In applying this standard, the hearing examiner made a number of factual determinations. He found that five Chevrolet dealers currently serve the relevant market area ("RMA"): Bass, Jackshaw, Lally, LaRiche, and O'Brien. Four dealers originally protested the relocation, but three of the four withdrew their protest prior to the hearing, leaving O'Brien as the sole protestant. The current Bass dealership is located on a four-lane roadway with a median strip, across from Thistledown Racetrack. Bass is located next to a Volkswagen/Subaru dealership and is within sight of Randall Park Mall, the largest shopping mall in

the area. The hearing examiner took judicial notice of the fact that there have been widely reported public disturbances at the mall. Richard Bass testified that he was concerned that a negative perception of the area surrounding the current dealership has resulted in lost sales and will result in lost sales in the future.

In furtherance of its "Project 2000" plan, Chevrolet approached Bass about relocating his dealership. Edward K. Roggenkamp, Executive Director of Dealer Network Development, North American Operations for General Motors, testified that the Project 2000 plan was based upon numerous demographic and economic criteria aimed at improving location for both the dealers and the public. To induce Bass to relocate, Chevrolet offered him a substantial loan, loan forgiveness guarantees, and a substantial number of additional new vehicles for sale at the proposed new location.

Bass plans to invest in excess of $4 million in the new location. Bass plans to hire over twenty new employees, and to use the old facility as a wholesale parts warehouse, car rental operation, body shop, and used car lot. The current facility, however, is larger than the proposed facility, consists of more land and building square footage, and can accommodate more new and used cars on site than the proposed facility.

With respect to market penetration, the hearing examiner found that Chevrolet's penetration rate nationally, in the state of Ohio, and in the Cleveland area has declined in comparison to competitors. Chevrolet's penetration rates in both Bass and O'Brien's Area of Geographic Sales and Service Advantage ("AGSSA") are below Chevrolet's expectations and substantially below average RMA penetration rates. However, Chevrolet's expected and actual penetration in the Cleveland RMA compared favorably to those in the Cincinnati and Columbus Multiple Dealer Area ("MDA").[2] In 1993, Chevrolet's sales performance in the RMA mirrored the Cleveland MDA performance. Also, in the first nine months of 1994, the RMA performed slightly better than the MDA.

The four RMA dealers, Lally, Jackshaw, LaRiche, and O'Brien, believe that a Bass relocation will have a negative impact on their future sales. GMC's expert, James A. Anderson, testified that, in his opinion, a relocation of Bass to Orange Village would likely increase sales by all of the RMA dealers and increase Chevrolet penetration and sales in the RMA. In Anderson's opinion, most new sales would be conquest sales from other vehicle manufacturers. O'Brien's expert, Professor John P. Matthews, testified that the proposed relocation would

2. The Relevant Market Area ("RMA") is a ten-mile area around the relocation site. Chevrolet has designated Cleveland as a Multiple Dealer Area ("MDA"). In a major metropolitan area such as Cleveland, each Chevrolet dealer is assigned an Area of Geographic Sales and Service Advantage ("AGSSA"). There are currently sixteen AGSSAs in the Cleveland MDA. Each AGSSA consists of census tracts closest to the dealer's location.

result in a loss of sales by the O'Brien dealership, which ultimately would cause its failure. After hearing this conflicting opinion testimony, the hearing examiner specifically found that the proposed relocation would result in O'Brien and the other same-line dealers in the RMA losing sales to Bass.

O'Brien also presented the testimony of Professor Norman Krumholz, an expert in the field of urban affairs. Professor Krumholz testified that the proposed relocation would be "contrary to the public interest as regards the African–American community in the greater Cleveland area." Professor Krumholz expressed the opinion that the GM Project 2000 plan is moving dealerships from areas of greater African–American population concentration to areas where African–Americans are a smaller percentage of the population.

The hearing officer made the following conclusions with respect to the criteria set forth in R.C. 4517.51:

"A. The effect of the relocated dealership upon existing new motor vehicle dealers of the same line-make in the RMA would be the loss of sales to all dealerships in the RMA, and would result in losses to O'Brien significant enough to make the dealership unprofitable if it were to comply with Chevrolet's suggestions concerning improving facilities, increasing marketing, etc.

"B. The proposed relocation would not benefit the general public interest. The evidence is evenly balanced on the positive effects of relocation for Orange Village and potential customers in that area versus the negative impact upon Warrensville Heights and customers and potential customers in that area. Increased employment and tax revenue considerations which would result from the relocation to the general public are insignificant.

"C. (1) Franchisees of the same line-make in the relevant market area are providing adequate competition, and convenient consumer care for motor vehicles of the same line-make. The RMA contains dealerships that provide adequate to superior sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel. The current locations of the dealerships provide convenient consumer care, if customers are to choose geographic convenience over other criteria. While statistics indicate that sales of product are far from record breaking, competition among the RMA dealers, and those outside the RMA, is substantial.

"(2) Franchisees of the same line-make in the RMA are providing adequate market penetration and representation. While the franchisor would like to increase penetration, and such a goal is clearly desirable, there is no reliable evidence that the relocation as proposed would result in attaining those goals. Conversely, the evidence is clear that the O'Brien dealership would suffer from

the relocation and, most probably close. If that were to occur, representation of the product line would be reduced in a portion of the RMA.

"D. The franchisor has failed to comply with the requirements of Chapter 4517 O.R.C. in that the notice it sent to the same line-make dealers in the RMA of its intention to relocate the Bass dealership failed to contain 'the specific grounds for ... relocation of an existing motor vehicle dealer.' § 4517.50(A) O.R.C."

In its decision reversing the order of the board, the court of common pleas disagreed with the conclusions of the hearing examiner on almost every point. The court first focused on the hearing examiner's findings concerning the poor performance of the O'Brien dealership. Both the hearing examiner and the court noted that sales at the O'Brien dealership are substantially below expectations by Chevrolet and below that of the other dealers in the RMA. The court noted that in 1993 O'Brien was ranked ninety-third among the ninety-six dealers in its marketing, sales, and service area for effectiveness and traditionally has been in the bottom twenty percent of dealers in sales performance.

The court attributed O'Brien's problems to a lack of modernization and lack of advertisement. The court pointed out that, although the O'Brien dealership has been in existence since approximately 1960, in the last ten years it has made few improvements. Since being threatened with termination by Chevrolet, however, John O'Brien, Jr. indicated that O'Brien has made plans to increase advertising, make physical improvements to the dealership, and make other efforts to become more competitive. The court addressed the issue of the effect on the public interest, stating that the new location is safer, has better visibility and easier access for potential customers, has higher traffic flow, and has less crime. The court also noted that the new location would provide jobs, taxes, and facility investment in the area of over $4 million.

The court acknowledged that all of the dealers in the RMA enjoy good profits and a generally satisfied customer base despite low volume. However, in direct contrast to the conclusion of the hearing examiner, the court stated that market penetration and representation were inadequate. The court stated that "competition is a viable solution to that problem and it is on that premise that the 'good faith' tests in the statute are based." The court stated that "there is plenty of business out there that none of the current dealers in the RMA are securing." Although all of the dealers in the RMA claim that they will lose sales if Bass is permitted to relocate, the court stated that "the market opportunities are there for additional Chevrolet dealers who are willing to meaningfully compete for the sales." Therefore, even though the court acknowledged that the proposed relocation will move Bass closer to O'Brien, which is already suffering, the court

concluded that "[t]here are no facts contained in the board's Order which justify the board's conclusion that O'Brien will probably fail."

The court's conclusions were almost diametrically opposed to those of the hearing examiner. With respect to the criteria set forth in R.C. 4517.51, the common pleas court concluded that (A) the facts do not support the conclusion that O'Brien would probably fail; (B) the public would be benefitted in terms of safety, improved access, and better visibility, and relocation would provide jobs, taxes, and a land and facility investment to a location that is currently an eyesore; (C)(1) there is inadequate competition but generally satisfactory service, and (2) there is inadequate penetration and market representation; and (D) GMC was in compliance with the notice requirements of Chapter 4517 of the Revised Code.

█ In the first assignment of error, O'Brien claims that because the common pleas court failed to make separate findings of fact and conclusions of law pursuant to Civ.R. 52, this appeal must be dismissed for lack of a final appealable order. Civ.R. 52 applies "when questions of fact are tried by the court without a jury." Where a trial court sits in judicial review of an administrative agency determination, it is generally not independently finding the facts. In limited circumstances in an R.C. 119.12 appeal, a court of common pleas may admit additional evidence pursuant to R.C. 119.12, but no such additional evidence was admitted in this case. When an action comes to the court of common pleas as an appeal from administrative adjudication and the court hears no additional evidence, the court is not required to make separate findings of fact and conclusions of law. See *Rashid v. Ohio Liquor Control Comm.* (1988), 50 Ohio App.3d 32, 33, 552 N.E.2d 663, 664. Unless the court is making factual determinations on the basis of additional evidence not before the administrative agency, Civ.R. 52 has no application to such review proceedings. Fink, Wilson & Greenbaum, Ohio Rules of Civil Procedure With Commentary (1992) 718. The first assignment of error is not well taken.

█ In the second assignment of error, O'Brien contends that the board's decision was not a final appealable order because it failed to address O'Brien's attorney fees request. R.C. 4517.65(C) provides that the franchisor shall be liable for reasonable attorney fees in a protest filed under R.C. 4517.50 in which the board finds in favor of the protesting franchisee. Because the board is statutorily required to award reasonable attorney fees to a successful protestant, O'Brien believes its situation is analogous to cases in which a court by judgment entry finds a party entitled to reasonable attorney fees but leaves the amount of such fees to be determined in a later proceeding. *E.g., Eleven Ten Parkway Co. v. K. Amalia Enterprises, Inc.* (Feb. 11, 1997), Franklin App. No. 96APE09–1151, unreported, 1997 WL 65538. We disagree.

In *Eleven Ten Parkway* and the cases cited by O'Brien, the trial court awarded attorney fees or explicitly retained jurisdiction to do so in its judgment entry, but did not award a specific dollar amount. In the instant matter, the board rendered its decision in favor of O'Brien on July 24, 1995. GMC filed its notice of appeal on August 2, 1995. Subsequently, on August 8, 1995, O'Brien filed its request for attorney fees. At the time GMC filed its notice of appeal, there were no issues outstanding before the board. If we were to adopt O'Brien's argument, a successful protestant could thwart any appeal by the timing of its request for attorney fees. The board's order in this case was a final appealable order, and the common pleas court had jurisdiction to entertain the appeal. The second assignment of error is not well taken.

In the third assignment of error, O'Brien argues that GMC's notice of intention to relocate was defective and, therefore, it was error for the common pleas court to find GMC's notice to be adequate under the circumstances. Before the administrative hearing on the protest, O'Brien filed a motion for summary judgment on the grounds that GMC's notice of relocation was defective. The hearing examiner overruled that motion. After the hearing on the merits, the hearing examiner determined that GMC had failed to comply with the statutory requirement of specifying the grounds for the proposed relocation. In his recommendation, the hearing examiner stated that "failure to comply with this requirement is, of itself, fatal to the proposed relocation being approved."

The court of common pleas disagreed, holding that the notice was sufficient given the substantial discovery conducted before the hearing and the concomitant lack of prejudice to O'Brien. The court also held that the statute was written in the alternative and presumably was directory rather than mandatory.

It is evident upon a review of the language of R.C. 4517.50(A) that the notice requirement found therein is not merely directory but mandatory. In 1987 the General Assembly amended R.C. 4517.50 and included language that the franchisor must set forth the grounds for the proposed relocation. The statute specifically provides that "[e]ach notice shall set forth the specific grounds for the proposed * * * relocation of an existing dealer."

Although the notice requirement is mandatory, it does not necessarily follow that failure to comply with this requirement, in and of itself, precludes the board from considering the protest. This court's decision in *State ex rel. Vernon Place Extended Care Ctr., Inc. v. State Certificate of Need Review Bd.* (Aug. 11, 1983), Franklin App. No. 82AP-1044, unreported, illustrates this point. In *Vernon Place,* the Vernon Place Extended Care Center sought a writ prohibiting the Certificate of Need Review Board from proceeding on a case because no hearing was scheduled or held within the time required by R.C. 119.07. This

court concluded that, although the time requirement was clearly mandatory and not merely directory, any alleged improper delay was error reviewable on appeal and not an automatic divestiture of the board's jurisdiction. Accord *State ex rel. Pontiac Motor Div. of G.M. Corp. v. Motor Vehicle Dealers Bd.* (Nov. 29, 1984), Franklin App. No. 84AP–550, unreported.

In the instant case, the notice provision is mandatory in the sense that it establishes the procedure to be followed in seeking relocation of a dealership. Therefore, while it was error for GMC to fail to provide the grounds for the proposed relocation, whether GMC complied with the requirements of R.C. Chapter 4517 is but one factor among many to be considered in determining whether good cause has been established to relocate an existing new motor vehicle dealer. R.C. 4517.51. Any defect in the notice was cured by the extensive prehearing discovery conducted under R.C. 4517.57(B). The lack of prejudice was manifested by the fact that O'Brien prevailed before the board. In the absence of prejudice to O'Brien, the error is harmless, and the third assignment of error is not well taken.

■ In the fourth assignment of error, O'Brien argues that the common pleas court erred by applying the wrong burden of proof standard. O'Brien's argument is twofold. First, O'Brien claims that the common pleas court used a "good faith" burden of proof standard in reviewing the board's decision. Second, O'Brien claims that the trial court based its decision, at least in part, on whether the market will support another dealership.

It is undisputed that the Ohio Motor Vehicle Dealers Act requires "good cause" for a relocation. R.C. 4517.50, 4517.57(C), and 4517.65(D). The common pleas court in its decision reversing the board concluded that market penetration and representation were inadequate. As support for this conclusion, the court stated that "there is plenty of business out there that none of the current dealers in the RMA are securing." The court stated that "[c]ompetition is a viable solution to that problem and it is on that premise that the 'good faith' tests in the statute are based. If the market will support another dealership, relocation should be permitted. The facts reveal that it will."

Despite the unfortunate choice of the words "good faith" in the body of the opinion, the common pleas court then went on to state that GMC "has shown good cause for the relocation." *Id.* The judgment entry also reflects that the court was aware of the required burden of proof upon GMC. The judgment entry states that the "appellant has established good cause for the proposed relocation of Bass Chevrolet, Inc. under Sec. 4517.50 and 4517.51." Moreover, the court's decision reveals that the court was aware of the burden that GMC had to meet and in fact analyzed and discussed the board's decision in light of the nonexclusive list of factors that the board is to take into consideration in

determining whether good cause has been established. The fourth assignment of error is not well taken.

O'Brien's fifth and sixth assignments of error concern whether the common pleas court erred by failing to give deference to the agency's resolution of evidentiary conflicts, and whether the common pleas court abused its discretion by determining that the administrative agency's decision was not supported by reliable, probative and substantial evidence in accordance with law. Because these two assignments of error are interrelated, they will be discussed together.

As an initial matter, we address the appropriate standard of review. A party adversely affected by an order of an agency may appeal that order to the court of common pleas. That court must affirm the order of the agency if "it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative and substantial evidence and is in accordance with law." R.C. 119.12.

As a common pleas court reviews the agency's order, it performs a hybrid function: it makes a determination of the law and considers the evidence revealed at the administrative level. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. Even in the face of disputed evidence, as long as an agency's decision is supported by reliable, probative, and substantial evidence and is in accordance with law, a common pleas court may not substitute its own judgment for that of the agency. *T. Marzetti Co. v. Doyle* (1987), 37 Ohio App.3d 25, 29, 523 N.E.2d 347, 351–352.

The general rule is that the court should give due deference to the administrative resolution of evidentiary conflicts. *Univ. of Cincinnati v. Conrad,* 63 Ohio St.2d at 111, 17 O.O.3d at 67, 407 N.E.2d at 1267–1268. However, the Supreme Court stated in *Conrad:*

"[D]etermining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing * * * Court." *Id.*

The Supreme Court has interpreted *Conrad* to mean:

"[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595.

In *Conrad, supra,* the court explained this type of review as follows:

"In undertaking this hybrid form of review the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive." *Id.,* 63 Ohio St.2d at 111, 17 O.O.3d at 67, 407 N.E.2d at 1267–1268.

Whether there is *any* evidence to support a decision is a question of law. *Id.* at 111, 17 O.O.3d at 67, 407 N.E.2d at 1267–1268; *Kaufman v. Broughton* (1877), 31 Ohio St. 424, 430; *Western Ohio Ry. Co. v. Fairburn* (1918), 99 Ohio St. 141, 142, 124 N.E. 131, 131; *Woolley v. Staley* (1883), 39 Ohio St. 354, 361. A determination that there is a complete lack of evidence to support a finding does not involve a weighing of the evidence. *Katz v. Am. Fin. Co.* (1925), 112 Ohio St. 24, 28–29, 146 N.E. 811, 812. A decision without any foundation in fact is unreasonable, and, therefore, a complete lack of evidence as to the stated basis for its decision would support a finding that the board's decision was not supported by the required quantum of evidence.

On appeal to this court, we may reverse the judgment of the common pleas court if we conclude that the court abused its discretion in its review of the agency's order. *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 27 OBR 254, 500 N.E.2d 362; *Angelkovski v. Buckeye Potato Chips* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. On the question of whether the agency's order is in accordance with law, our review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

O'Brien argues that in the face of reliable, probative, and substantial evidence the common pleas court substituted its judgment for that of the board and failed to give due deference to the hearing examiner's resolution of evidentiary conflicts.

GMC and Bass argue that in this case the common pleas court did not resort to resolving or reweighing the evidence before the board. Instead, GMC and Bass take the position that the undisputed evidence and evidence from O'Brien's own witnesses support its position that the board's decision was not supported by reliable, probative, and substantial evidence. GMC's theory is that the protest filed by O'Brien is nothing more than a poorly performing dealer trying to keep a good dealer from moving a short distance to a better location because the poorly performing dealer wants to lock one of its competitors into an economically declining area.

After a review of the record, it is apparent that the parties' experts disagreed on almost every one of the nonexclusive statutory factors. Mr. Anderson, GMC's expert, was of the opinion that a huge untapped market for Chevrolet products exists in the RMA. He was also of the opinion that O'Brien was a very poor performing dealership, and if O'Brien took steps to improve its performance, the relocation would not result in O'Brien having to close its doors. Anderson concluded that relocating Bass to an area off the freeway with higher visibility would result in increased sales for all the same-line dealers in the RMA. Anderson believed that these increased sales would not come from other dealers but would be conquest sales from other vehicle manufacturers.

In contrast, Professor Matthews, O'Brien's expert, testified that, based on his analysis of the demographic and financial data, much of Bass's new sales at the proposed location would in large part come from other dealers and that O'Brien would be particularly hard hit because of its close proximity to the new location. In addition, all of the dealers testified that they had experienced product shortage of one kind or another. Professor Matthews determined that if Bass were allocated additional products and also received a financial subsidy from GMC, Bass would be able to sell more vehicles at lower prices than O'Brien. Professor Matthews also calculated that a loss of fifty to one hundred sales would be financially devastating to O'Brien.

 With respect to the enumerated factors, the hearing examiner's conclusions were largely in agreement with those of Professor Matthews, while the court of common pleas agreed completely with Anderson. The court of common pleas determined that there were "no facts" to justify the conclusion that O'Brien probably would fail. However, contrary to the determination of the court of common pleas, there was evidence, primarily in the form of Professor Matthews's expert testimony, that the proposed relocation would result in the failure of the O'Brien dealership.

 Apart from finding a lack of evidence, the court, in its review, did not determine that Professor Matthews's testimony and the board's findings were internally inconsistent, impeached by evidence of a prior inconsistent statement, rested upon imperfect inferences, or were otherwise unsupportable. See *Ohio Historical Soc.*, 66 Ohio St.3d at 471, 613 N.E.2d at 595–596. The common pleas court, acting as the reviewing court, failed to give due deference to the administrative resolution of evidentiary conflicts. Although GMC was able to elicit several admissions from O'Brien's expert concerning the attractiveness of the proposed site, the migration patterns of the surrounding area, and Chevrolet's low penetration rate, these admissions did not alter Professor Matthews's projections that O'Brien would lose a significant number of sales, particularly in light of

product shortages of some of Chevrolet's most popular models. The court's failure to defer to the determination of the administrative body when the expert evidence consisted of conflicting testimony of approximately equal weight was an abuse of discretion.

Based upon our review of the entire record, including the briefs, the transcript of the hearing before the hearing examiner, the depositions, the exhibits, and the opinions of the board and the common pleas court, we conclude that the court of common pleas did substitute its judgment for that of the board despite the presence of reliable, probative, and substantial evidence that the proposed relocation would have a detrimental effect on the surrounding dealers, and that GMC failed to meet its burden of establishing good cause for the relocation. The fifth and sixth assignments of error are well taken.

In the seventh assignment of error, O'Brien claims that the trial court erred by failing to consider its motion to stay. In light of our resolution of the other issues, this issue is rendered moot.

Based on all of the foregoing, the first, second, third and fourth assignments of error are overruled, the fifth and sixth assignments of error are sustained, and the seventh assignment of error is rendered moot. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK, P.J., and BOWMAN, J., concur.