OPINION
Michael L. Dever, appellant, appeals the judgment of the Franklin County Court of Common Pleas. The court reversed an order by the Ohio Motor Vehicle Dealers Board ("board"), finding that appellant's protest filed against Nissan Motor Corporation, U.S.A., appellee, should be denied. We affirm.
In 1997, Matre, Inc. ("Matre"), a company formed by J. Charles and John Busam, owned a Nissan dealership named "Nissan of Route 4" located in Fairfield, Ohio. In a letter dated July 23, 1997, they notified Patrick Doody, the Regional Vice President of the Nissan North Central Region,[1] of their intention to sell the Route 4 dealership. They also stated in the letter that an agreement had been reached with appellant for the purchase of the Route 4 dealership. The letter states in part:
 [Appellant] is aware of the need to relocate this franchise and is willing to do so within 60 days of your approval. He will locate this Nissan franchise near his present Toyota store on Route 4, in the area spelled out in our term agreement.
 We are confident that you will find [appellant] to be an excellent candidate, possessing the experience, capital, and management expertise that [appellee] would require.
 At this time we ask [appellee] to approve [appellant's] purchase of this franchise. We also ask you to review [appellee's] FIRST RIGHT of REFUSAL with respect to this Nissan of Route 4 franchise. We ask you to release this First Right of Refusal or exercise it within the time allotted in our agreement.
Busam attached to the letter a copy of the intent agreement between Matre and appellant concerning the sale of the Route 4 dealership. Section 11 of the letter of intent agreement states: "This transaction is subject to [appellant] receiving unconditional approval for a Nissan Dealer Sales and Service Agreement for which [appellant] shall use best efforts to obtain approval from [appellee]." Appellant also gave Matre a deposit as part of the agreement.
Appellant had previously owned other Nissan dealerships including one located in Florence, Kentucky. At the time of the agreement between appellant and Matre, appellant did not own a Nissan dealership. Appellant intended to move the Route 4 dealership to a parking lot located next to a Toyota dealership he owned. Appellant also intended to convert a body shop located on the lot into a new car showroom. Appellant stated that this would be a temporary arrangement and that he planned on eventually building new facilities for the Route 4 dealership.
Doody testified that he evaluated the proposed transfer of the Route 4 dealership to appellant based upon appellant's past performance as a Nissan dealership owner, and upon appellant's plans for the Route 4 dealership. In a letter dated September 22, 1997, Doody informed Busam that appellee was exercising its right of first refusal. The letter also stated:
 In exercising this Right of First Refusal, [appellee] will perform the obligations and acquire the rights of the buyer under the contract. Moreover, [appellee] has the contractual right to assign its rights under the buy-sell contract to a qualified Nissan candidate. Should [appellee] make such an assignment, [appellee] will guarantee the payment of the full purchase price required in the buy-sell contract by such assignee, ensuring that you will get the full benefit of this negotiated contract.
Thereafter, an "assignment of agreement" was made between appellee and Jeff Wyler Nissan ("Wyler"), in which appellee assigned the right to purchase the Route 4 dealership to Wyler.
Doody claims that he informed appellant of appellee's decision to exercise its right of first refusal on September 22, 1997, by telephone. Appellant also received a letter dated October 9, 1997, from appellee's counsel. The letter included a check reimbursing appellant's deposit with accrued interest and stated that appellant's agreement with Matre was "null and void" because appellee had exercised its right of first refusal.
On October 16, 1997, appellant filed a motion in the Butler County Court of Common Pleas for a temporary order restraining appellee from assigning the purchase of the Route 4 dealership to Wyler or any person or entity other than appellant. The restraining order was extended by the United States District Court for the Southern District of Ohio after appellant's complaint was transferred to federal court. On November 13, 1997, appellant voluntarily dismissed his complaint in federal court, resulting in the dismissal of the temporary restraining order. On November 19, 1997, appellee entered into a Nissan dealer term sales and service agreement with Wyler. On the same day, Matre and Wyler executed an agreement transferring the Route 4 dealership from Matre to Wyler.
Appellant also sought a remedy through the board pursuant to R.C. 4517.56(C) by filing his protest with the board on October 2, 1997. The matter was assigned to a hearing examiner, and a hearing was held on March 23 and 24, 1998. Doody testified on behalf of appellee with regard to why appellee's right of first refusal was exercised. Doody testified that he was the person that made the decision to exercise appellee's right of refusal. He stated that he based his decision on appellant's "past performance as a Nissan dealer in the Cincinnati market, and also in what facilities we could expect to be in if we moved forward with that."
Doody testified that when appellant owned a Nissan dealership in Florence, Kentucky, from 1989-1992, "the dealership was experiencing substandard performance in regards to sales, profitability, parts and service business, a decline versus the region and the [Cincinnati Metropolitan area], and below regional performance in customer satisfaction rating ***." Doody also stated that after appellant sold this Nissan dealership to Allen Lucas, "sales experienced an increase of 140 percent from the previous year's sales, *** a very significant gain versus the region's increase in sales." Regarding appellant's plans to move the Route 4 dealership to the body shop next to his Toyota dealership, Doody testified that the new location was "more cramped" and did not meet appellee's guides in terms of building size and layout. Doody further stated that as of September 22, 1997, all of the Cincinnati Metropolitan area Nissan dealerships complied with appellee's guides for dealership building size and layout.
Doody further testified that he contacted Wyler about purchasing the Route 4 dealership because Wyler had been the top performing Nissan dealership in the Cincinnati Metro market for several years. He also stated that the decision was made to transfer the Route 4 dealership to Wyler based upon Wyler's proposed facilities meeting appellee's guides for building size and layout and wanting to "go with the proven performer in the marketplace."
In his report and recommendation, the hearing examiner made certain findings of fact based upon the evidence that was presented. The hearing examiner found that Doody called appellant on the telephone and informed him that appellee had decided to exercise its right of first refusal. The hearing examiner also found that "Doody relayed to [appellant] Doody's reasons for exercising the right of first refusal." He further found that "Doody never sent written notice, by certified mail or any other method, to [appellant] informing [appellant] that [appellee] would exercise its right of first refusal or indicating that [appellee] otherwise rejected [appellant's] proposal to acquire the Matre dealership assets." The hearing examiner stated that "Wyler made considerable expenditures to acquire Matre's dealership assets, including $1,679,270 for Matre's new Nissan vehicle inventory, $200,000 for Matre's fixed assets, $52,820 for new Nissan parts and accessories, $50,000 for Matre's goodwill and other assets."
The hearing examiner also made the following conclusions of law:
 11. There is no doubt that [Doody] disregarded the requirements of R.C. § 4517.56 when he responded to notice of a proposed transfer of Matre's dealership assets. Doody testified that he called [appellant] to tell him of his decision to exercise [appellee's] right of first refusal, not because of any statutory notice requirement, but rather out of "business courtesy." He also testified both that he believed that the statute did not apply, and that he was unaware of the statute's requirements. Doody was mistaken in his belief that the requirements did not apply in the present case.
***
 23. In the present case, [appellee] provided [appellant] with actual notice of its decision to exercise its right of first refusal and thereby prevent [appellant] from acquiring Matre's dealership assets. Doody testified that in a telephone call to [appellant] on September 22, 1997, he told [appellant] of his decision and the reasons for the decision. [Appellant] did not rebut this testimony. [Appellee] gave [appellant] sufficient information to allow [appellant] to obtain legal counsel and file a timely protest with the Board. While [appellee] clearly erred in failing to adhere to R.C. § 4517.56(C)'s mandatory certified mail notice requirement, the error resulted in no prejudice to [appellant] and was harmless.
The hearing examiner also found that appellee "has satisfied its burden of establishing that it had good cause for rejecting the transfer of Matre's dealership assets to [appellant]." The hearing examiner then concluded that appellant's protest should be denied.
Appellant filed an objection to the hearing examiner's report and recommendation with the board, arguing that the hearing examiner's decision would create a mechanism by which manufacturers could "CIRCUMVENT THE MANDATORY OBLIGATIONS" of R.C.4517.56. Appellant claimed that the concept of "rights of first refusal *** are contrary to Ohio's Motor Vehicle Franchise Statute." Appellant also argued that the rights of first refusal in franchise agreements were against public policy and illegal. Appellee also objected to the hearing examiner's report and recommendation. Appellee argued that some of the findings of fact and conclusions of law of the hearing examiner were incorrect. Appellee further argued that the board had no jurisdiction over appellant's protest because: (1) the board lacked the authority to grant appellant relief; and (2) appellant failed to preserve his remedy by dissolving his temporary restraining order filed in the Butler County Court of Common Pleas.
After holding a hearing on June 11, 1998, the board, in a one-page opinion, disapproved of the hearing examiner's report and recommendation "on the grounds that all of the provisions of R.C. Section 4517.56, including notice provisions, are mandatory provisions which are clear and unambiguous." The board found that appellee failed to follow R.C. 4517.56(C) because it did not provide notice to appellant by certified mail. The board did not address the other objections argued by the parties.
On June 25, 1998, appellee appealed the board's decision by filing a notice of appeal with the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The court reversed the board's decision and affirmed the hearing examiner's determination that appellant's protest should be denied. The court agreed with the hearing examiner's finding that "any defect in the notice to [appellant], advising him that the sale of the Matre dealership to him would not be approved, caused him no prejudice. It was, therefore, harmless." Appellant appeals this decision and presents the following three assignments of error:
 I. The Common Pleas Court committed an error by not specifically finding that Nissan failed to demonstrate good cause for failing or refusing to approve the transfer to Dever.
 II. The Common Pleas Court committed an error by not finding that rights of first refusal cannot be used as a substitute for full compliance with all of the provisions of Ohio's Motor Vehicle Franchise Act.
 III. The Common Pleas Court committed an error by not finding that Appellee failed to comply with the mandatory notice requirements of O.R.C. § 4517.56.
Appellant argues in his first assignment of error that the trial court erred by not specifically finding that appellee failed to demonstrate good cause by declining or refusing to approve the transfer to appellant. The court did not directly address this issue and instead stated in its opinion:
 It would appear from reading the Order of the Board and the Hearing Examiner's Report and Recommendation together that the only issue before this Court presently is whether or not the improper notice to [appellant] by [appellee] is fatal to [appellee's] case. The Board took no issue with the findings of the Hearing Examiner that [appellee] rightfully refused to approve [appellant] because of his proposed location and past performance. [Appellant] has not filed a cross appeal.
R.C. 4517.58 states in part that the board's "decision shall be final upon its delivery or mailing, except that any person adversely affected by the decision may appeal in the manner provided by sections 119.01 to 119.13 of the Revised Code." R.C.119.12 provides that "[a]ny party adversely affected by any order of an agency" may appeal the order to a court of common pleas. R.C. 119.12 also provides that with the party's notice of appeal, the party shall set "forth the order appealed from and the grounds of his appeal."
A review of the record shows the board did not address the hearing examiner's conclusion of law that appellee "satisfied its burden of establishing that it had good cause for rejecting the transfer of Matre's dealership assets to [appellant]." The board only found that appellee failed to comply with the requirements of R.C. 4517.56(C) to provide notice by certified mail. Appellant could have appealed the board's failure to find that appellee did not satisfy its burden of establishing good cause, but appellant failed to do so. It is logical that appellant should not be allowed to set forth "grounds of his appeal" without also filing an appeal pursuant to R.C. 119.12. Therefore, we agree with the trial court's determination that since appellant failed to file a cross appeal of the board's decision, the only issue properly appealed to the court was whether the board erred in finding that improper notice to appellant by appellee was fatal to appellee's case. We also note that upon our examination of the record, we agree with the statement that "[t]here is nothing in the record from which the Court could find any lack of objectivity or unreasonableness or unfairness in the evaluation by [appellee]." Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the court erred by not finding that the rights of first refusal cannot be used as a substitute for full compliance with R.C. Chapter 4517. Appellant argues in his third assignment of error that the court erred by not finding that appellee failed to comply with the mandatory notice requirements of R.C. 4517.56. Because of the interrelated nature of appellant's second and third assignments of error, we will discuss them together.
The standard of review for the court of common pleas is given in R.C. 119.12, which states in part:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence. Crowe v. State Bd. OfEducation (Oct. 26, 1999), Franklin App. No. 99AP-78, unreported, quoting Samson v. Ohio Bd. Of Edn. (Aug. 13, 1998), Franklin App. No. 97APE12-1702, unreported.
 "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion `*** implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' *** Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment.
 "The fact that the court of appeals *** might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." [Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, quoting Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261.]
R.C. 4517.56(B) states in part:
 The franchisor shall provide the franchisee and the prospective transferee with written notice by certified mail of any refusal to approve a sale or transfer of the business and assets *** of a new motor vehicle dealer within thirty days of receipt of the written notice advising of the proposed transfer. The notice shall specify the objective criteria used to evaluate the prospective transferee and the criteria which the transferee failed to meet.
In the present case, there is no question that appellee failed to comply with the notice requirements of R.C. 4517.56(B). Appellee did not provide written notice, via certified mail, of its refusal to approve the sale and transfer of the Route 4 dealership from Matre to appellant. Appellant contends that such a failure demonstrates that his protest before the board should be upheld. We disagree.
A careful reading of R.C. 4517.56 shows that one of the purposes of the statute is to provide protection to franchisees and proposed transferees from arbitrary decisions of franchisors. For example, a franchisee and a prospective transferee may be required to provide the prospective transferee's:
 *** name and address and the names and addresses of the transferee's prospective management personnel *** other information regarding the transferee's character, business experience, and financial ability as may be reasonably requested by the franchisor to enable it to evaluate the transferee's qualifications and ability to comply with the requirements of the franchise then in effect. R.C. 4517.56(A).
A franchisor may then disapprove of the sale or transfer only if good cause exists. R.C. 4517.56(D). R.C.4517.56(E)(1)-(5) outlines factors that do not constitute sufficient good cause upon which a franchisor may rely to disapprove of a sale or transfer of a franchised new motor vehicle dealership.
R.C. 4517.56(B) requires a franchisor that refuses to approve a transfer from a franchisee to a prospective transferee to specify "the objective criteria used to evaluate the prospective transferee and the criteria which the transferee failed to meet." The franchisor is required to provide this information to the franchisee and the prospective transferee by written notice sent by certified mail. Id. This information may also be used by the board to determine whether good cause existed "for the franchisor to fail or refuse to approve such a sale or transfer." R.C 4517.56(D).
A review of the complete record of the present case shows that there is no question concerning "the objective criteria used to evaluate [appellant] and the criteria which the [appellant] failed to meet." The hearing examiner made a finding of fact that "Doody relayed to [appellant] Doody's reasons for exercising the right of first refusal." Additionally, appellant does not claim that appellee did not disclose his reasons for exercising appellee's right of first refusal. Instead, the record shows that appellant did not provide appellee with information during discovery concerning criteria appellant failed to meet. For example, appellant failed to produce any plans or drawings of the new lot for the Route 4 dealership pursuant to appellee's discovery request even though appellee had the burden "to establish that there is good cause for the franchisor *** to fail or refuse to approve a sale or transfer of all or a controlling interest in a franchise." R.C. 4517.57(C). Appellee was able to show that the new location for the Route 4 dealership did not meet appellee's facility standards only because it had copies of appellant's plans pursuant to R.C. 4517.56(A).
Accordingly, we find that the evidence supports a finding that appellee disclosed to appellant: (1) the objective criteria used to evaluate appellant, and (2) the criteria which appellee found that appellant failed to meet. Therefore, the question that should be answered in the present case is whether appellee's failure to provide notice pursuant to R.C. 4517.56(B) is, by itself, sufficient reason to sustain appellant's protest.
Our research fails to show that this court has previously addressed the issue regarding R.C. 4517.56(B). However, this court has addressed the issue of notice regarding a statute that is similar to R.C. 4517.56(B). R.C. 4517.50(A) provides:
 When a franchisor seeks to enter into a franchise to establish an additional new motor vehicle dealer in, or relocate an existing new motor vehicle dealer at a location in, a relevant market area where the same line-make of motor vehicle is then represented, the franchisor shall first give notice in writing, by certified mail, to the motor vehicle dealers board and to each franchisee of such line-make in the relevant market area of the franchisor's intention to establish an additional new motor vehicle dealer in, or relocate an existing new motor vehicle dealer at a location in, that relevant market area. Each notice shall set forth the specific grounds for the proposed establishment of an additional motor vehicle dealer or relocation of an existing motor vehicle dealer. ***
In Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc.
(1997), 118 Ohio App.3d 470, the franchisor informed "same-line dealers" of its intention to relocate a new dealership in the market area. The franchisor did not disclose the proposed grounds for the intended relocation as required by R.C. 4517.50(A). One of the same-line dealers argued that the franchisor's "notice of intention to relocate was defective and, therefore, it was error for the common pleas court to find [the franchisor's] notice to be adequate under the circumstances." Id. at 480. We found that the notice provisions of R.C. 4517.50(A) are mandatory but also held that in the absence of prejudice to the same-line dealer, the error was harmless. Id. "[W]hether [the franchisor] complied with the requirements of R.C. Chapter 4517 is but one factor among many to be considered in determining whether good cause has been established to relocate an existing new motor vehicle dealer. R.C.4517.51. Any defect in the notice was cured by the extensive prehearing discovery conducted under R.C. 4517.57(B)." Id. at 481.
We agree with the reasoning in Gen. Motors Corp. and apply it to the present case. In order to sustain his protest against appellee based solely upon appellee's failure to follow the notice provisions in R.C. 4517.56(B), appellant also needed to show that he was prejudiced by appellee's failure to follow the notice provisions. To hold otherwise would be to put the method of the procedure above the main purposes of R.C. 4517.56. Accordingly, we agree with the trial court's decision finding that any defect in the notice to appellant concerning appellee's rejection of the sale of the Route 4 dealership to appellant was harmless because it caused no prejudice to appellant.[2] We find that the trial court did not abuse its discretion by reversing the board's decision. Appellant's second and third assignments of error are overruled.
Accordingly, all three of appellant's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The "Nissan North Central Region" is a geographical area that comprises twelve midwestern states including the state of Ohio.
[2] We note that appellee argued that it did not have to follow R.C. 4517.56 because its right of first refusal was a contractual right. However, "[i]t is well settled that a valid contract cannot be made if its purpose or performance is contrary to statute." Marsh v. Lambert (1998), 129 Ohio App.3d 685, 687. Therefore in the present case, the provisions of R. C. Chapter 4517 apply to appellee even if the contract terms conflict with the statute.