OPINION
Appellant, The Ohio Veterinary Medical Licensing Board (the "Board"), appeals the February 14, 2000 judgment entry of the Franklin County Court of Common Pleas, that reversed the Board's October 1, 1998 order revoking the Ohio veterinary license of appellee, James W. Harrison, D.V.M., M.S. For the reasons that follow, we affirm the decision of the court of common pleas.
This case involves appellee's 1994 treatment of a three-year-old, mixed-breed, male dog named Bear. The record indicates that, in April 1994, Bear was referred to appellee, a specialist in veterinary orthopedic surgery, by a local veterinarian, Dr. Earl Kittle, for rear leg lameness. On April 26, 1994, appellee performed surgery on Bear's rear knees. By letter to Dr. Kittle dated April 28, 1994, and copied to Bear's owner, appellee stated that, upon examination of the dog, he "noticed marked anterior drawer signs which are pathognomonic for ruptured anterior cruciate ligaments." Appellee's letter then described an extensive anterior cruciate ligament ("ACL") repair surgery as having been performed on Bear.
Bear continued to exhibit lameness in his left leg and was again referred to appellee in September 1994 and, at that time, appellee performed another surgery on Bear's left knee. By letter to Dr. Kittle dated September 12, 1994, and copied to Bear's owner, appellee stated that a torn piece of the posterior pole of the medial meniscus of Bear's left knee had been identified and removed. The September 12, 1994 letter also referenced appellee's prior surgery to repair Bear's ruptured anterior cruciate ligaments on both knees.
In October 1994, Bear continued to exhibit lameness, and appellee referred Bear to Dr. Steven Schrader, D.V.M., associate professor of orthopedics/neurosurgery at The Ohio State University College of Veterinary Medicine. Upon examination, Dr. Schrader determined that Bear's left patella was displaced, which he repaired surgically. In so doing, Dr. Schrader discovered discrepancies between what he found on Bear's body during surgery (and through x-rays on both of Bear's knees) and the surgeries described by appellee in his two prior letters. In particular, Schrader found no evidence supporting appellee's diagnosis of a cruciate ligament tear or meniscus injury and found no evidence that the extensive ACL surgery described in appellee's April 1994 letter had been performed. By letter to the Board dated November 11, 1994, Schrader outlined his allegations concerning appellee's conduct and requested that the Board consider a charge of ethical misconduct against appellee.
The Board conducted an investigation into Schrader's complaint and, on June 3, 1997, sent appellee a Notice of Opportunity for Hearing alleging violations of R.C. 4741.22(A), (R), and (V), and Ohio Adm. Code4741-1-03(A).[1] The factual basis for all violations was that appellee did not perform either the April 1994 ACL surgery as stated in appellee's April 28, 1994 letter or the September 1994 meniscus surgery. The matter was referred to a hearing examiner, who heard live testimony on two separate days.
At the hearing, Dr. Schrader testified in accord with his prior, written allegations against appellee. In particular, Dr. Schrader testified that he found no indication on Bear's body that appellee performed the ACL surgery in April 1994 or the meniscus repair in September 1994.
In his testimony, appellee admitted that he did not perform the ACL surgery as described in the April 28, 1994 letter to Dr. Kittle but that he performed a less extensive biceps advancement surgery. Appellee also described the meniscus repair surgery performed in September 1994, maintaining that it was consistent with what was described in his September 1994 letter to Dr. Kittle.
Further, appellee explained that the April 1994 letter to Dr. Kittle was the result of a clerical mistake in the way he generated courtesy letters to referring veterinarians and pet owners at the time. In particular, appellee testified: (1) that the letter was one of several pre-formatted template letters describing common surgical procedures performed by appellee; (2) that he mistakenly instructed his transcriptionist to use the template describing routine ACL repair surgery instead of dictating a unique letter about Bear's relatively atypical surgery; and (3) that the transcriptionist signed and sent the letter on appellee's behalf without appellee's review or approval, as was the practice at the time. This testimony was collaborated by the testimony of appellee's transcriptionist, Becky Jones. Finally, appellee called Dr. Gerald Rosenberg, M.D., an orthopedic surgeon, who testified that none of Dr. Schrader's findings were inconsistent with both of the surgical procedures that appellee said he actually performed.
On July 29, 1998, the hearing examiner issued his report. After addressing the procedural posture of the matter and reviewing some of the testimony adduced at the hearing, the hearing examiner made the following observations:
 [T]his case does not turn on the professional skill of Dr. Harrison, but, rather, the issue lies with the question of whether or not Dr. Harrison reported surgery not performed and misrepresented work not done. The evidence presented indicates that Dr. Harrison did just that in the report he issued in April to Dr. Kittle and he repeated it again in September. While Dr. Harrison suggests that the April letter stems from a paper flow flap, he repeated the misinformation in September, and he never has written Dr. Kittle or Bear's masters that the April letter was a mistake. It now appears that it was not. Bear's body should have supported Dr. Harrison's assertions and it did not.
 Findings of Facts
 1. The surgery represented to have been performed in Dr. Harrison's letter to Dr. Kittle of April 28, 1994, was not performed.
 2. The surgery represented to have been performed in Dr. Harrison's letter to Dr. Kittle of September 12, 1994, was not performed.
 3. Dr. Harrison has misrepresented the level and type of treatment he performed on Bear on two occasions.
 3.[sic] The evidence sustains the charge that Dr. James W. Harrison did not conform to the rules prescribed by the Board in his in his [sic] representation of veterinary services performed. [Hearing examiner's report at 3-4.]
The hearing examiner also made the following single conclusion of law: "Dr. William W. Harrison has violated ORC 4741.22 and OAC 4741-1-03 by engaging in conduct that does not conform to the rules of the Veterinary Medical Licensing Board and by failing to conform to minimal standards of care of similar practitioners under same or similar circumstances." Finally, the hearing examiner recommended that appellee's license to practice veterinary medicine be revoked.
On October 1, 1998, the Board adopted the findings of fact and conclusions of law of the hearing examiner. Furthermore, the Board specifically found that appellee had violated R.C. 4741.22(A), (R), and (V), and Ohio Adm. Code 4741-1-03(B) [Ohio Adm. Code 4741-1-03(A)]. Finally, the Board revoked appellee's license to practice veterinary medicine.
Pursuant to R.C. Chapter 119, appellee appealed to the Franklin County Court of Common Pleas, which reversed the decision of the Board. In so doing, the court of common pleas found: (1) that the charge for violating R.C. 4741.22(V) was not supported because neither the hearing examiner nor the Board found that appellee knowingly made a false report; (2) that a charge for violating R.C. 4741.22(R) could not be supported absent some evidence of scienter; (3) the issue of the competency or efficacy of the surgeries was not a matter charged by the Board; and (4) that the Board failed to make a specific finding that appellee did not perform repair to a torn piece of the meniscus and the evidence as to this was, at best, equivocal. By judgment entry filed February 14, 2000, the court of common pleas found that the Board's order was not supported by reliable, probative and substantial evidence and reversed the Board's decision revoking appellee's license to practice veterinary medicine.
It is from this judgment entry that the Board appeals raising the following two assignments of error:
 1. The trial court erred by applying a de novo review and by substituting its judgment for that of the Ohio Veterinary Medical Licensing Board.
 2. The trial court erred by finding that the decision of the Board to revoke Dr. Harrison's license was not supported by reliable, probative, and substantial evidence.
The Board's two assignments of error concern whether the court of common pleas erred by substituting its judgment for that of the Board on matters involving evidentiary conflicts and erred by determining that the Board's order was not supported by reliable, probative, and substantial evidence and in accordance with law. Because these two assignments of error are interrelated, they will be addressed together.
First, we reiterate the appropriate standard of review applicable in a challenge to an administrative agency decision pursuant to R.C. Chapter 119. A party adversely affected by an order of an agency may appeal that order to the court of common pleas, which must affirm the order of the agency if "it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12
This standard involves two different inquiries: (1) a hybrid factual/legal inquiry — Is the order supported by reliable, probative, and substantial evidence? (2) a purely legal inquiry — Is the order in accordance with law? Ohio Historical Soc. v. State Emp.Relations Bd. (1993), 66 Ohio St.3d 466, 470. When the common pleas court undertakes the first of these two inquiries, it must give deference to the agency's resolution of evidentiary conflicts; however, "the findings of the agency are by no means conclusive." Univ. of Cincinnativ. Conrad (1980), 63 Ohio St.2d 108, 111. As the Ohio Supreme Court has explained:
 * * * "Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order." Id. [Univ. of Cincinnati, supra] at 111 * * *. We take this precedent to mean that an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. See id. at 111-112. * * * The agency's order survives the first prong of the common pleas court's review if the court finds that the evidence the agency relied on is indeed "reliable, probative, and substantial." [Ohio Historical Soc., supra at 470-471; citations omitted.]
Therefore, and consistent with its obligations under R.C. 119.12, a common pleas court may consider the credibility of competing witnesses, the weight and probative character of the evidence and, thus, to a limited extent, may substitute its judgment for that of the administrative agency. Columbia Gas Transm. Corp. v. Ohio Dept. ofTransp. (1995), 104 Ohio App.3d 1, 4.
Moreover, a court of common pleas must determine whether the agency's order is in accordance with law — the second and purely legal inquiry under the standard established by R.C. 119.12. Thus, "to the extent that an agency's decision is based on construction of the state or federal Constitution, a statute, or case law, the common pleas court must undertake its R.C. 119.12 reviewing task completely independently." OhioHist. Soc., supra, at 471.
On appeal to this court, the standard of review is even more limited. Unlike the court of common pleas, the court of appeals does not determine the weight of the evidence. Columbia Gas, supra, at 4. Rather, "we may reverse the judgment of the common pleas court if we conclude that the court abused its discretion in its review of the agency's order." Gen.Motors Corp. v. Joe O'Brien Chevrolet, Inc. (1997), 118 Ohio App.3d 470,483 (finding that common pleas court's failure to defer to the determination of the administrative body on conflicting expert testimony of approximately equal weight was an abuse of discretion). On the question of whether the agency's order is in accordance with law, our review is plenary. Id.
As noted above, the Board adopted the decision of the hearing officer and found that appellee had violated R.C. 4741.22(A) (failure to conform to the rules of the board governing proper, humane, sanitary, and hygienic methods in the care and treatment of animals), R.C. 4741.22(R) (gross incompetence), R.C. 4741.22(V) (making a report or other document that the veterinarian knows is false), and Ohio Adm. Code 4741-1-03(A) (departing from or failing to conform to minimal standards of care of similar practitioners under the same or similar circumstances). The Board argues that the trial court erred and abused its discretion when it held that these statutory and regulatory violations were not supported by reliable, probative, and substantial evidence and/or not in accordance with law.
The Board first contends that there was reliable, probative, and substantial evidence that appellee failed to render care that satisfied the minimal standards in the profession as required by R.C. 4741.22(A) and Ohio Adm. Code 4741-1-03(A). In particular, the Board contends that, based upon the testimony of Dr. Schrader, the Board could reasonably conclude either: (1) that appellee performed no surgeries at all; or (2) that those surgeries appellee claimed to have actually performed (the biceps advancement and the meniscus repair) failed to meet the minimal standards of care in the profession for the injuries described. We find the Board's argument unpersuasive.
As noted above, the hearing examiner, whose findings of fact and conclusion of law were adopted by the Board, did not make either of the two findings that the Board contends supports a violation of R.C.4741.22(A) and Ohio Adm. Code 4741-1-03(A). In particular, the hearing examiner did not find that appellee failed to perform any surgery but, rather, found that appellee misrepresented the level and type of surgery performed. Likewise, the hearing examiner specifically stated in the body of his report that the professional level of appellee's treatment was not at issue in this case despite the presentation of competing evidence in that regard. In sum, the hearing examiner's report precludes a finding of a violation of R.C. 4741.22(A) or Ohio Adm. Code 4741-1-03(A) on the grounds advanced by the Board here.
The Board also challenges the common pleas court's determination that a violation of R.C. 4741.22(V) was not supported by reliable, probative, and substantial evidence and/or not in accordance with law. According to the Board, appellee's explanation that the erroneous April 28, 1994 letter was sent by mistake was inconsistent with his later actions. In particular, the Board highlights two actions by appellee: (1) that appellee's September 1994 letter to Dr. Kittle continued to describe the first operation as involving ruptured ACLs; and (2) that appellee took no action to correct the erroneous April 1994 letter after appellee realized it was false.[2] We are again unpersuaded.
First, the Board's argument fails to address the fundamental legal defect in the Board's order — i.e., that the findings of fact adopted by the Board are legally insufficient to support a violation of R.C. 4741.22(V). As noted by the court of common pleas, R.C. 4741.22(V) does not simply prohibit misrepresentation; rather, it prohibits a veterinarian from making a report that he knows is false. Here, the findings of fact set forth in the hearing examiner's report merely state that appellee made misrepresentations. There is no finding that appellee made any misrepresentation knowing it was false.
Furthermore, the evidence relied upon by the Board is, at best, minimally relevant to appellee's mental state at the time the April 1994 letter was sent. Appellee's testimony that the April 1994 letter was an unintended mistake was uncontroverted. The fact that appellee did not correct the mistake later (after an investigation by the Board had commenced) does not indicate that appellee originally knew that his April 1994 letter was false. Likewise, there was no evidence that appellee realized his prior mistake before he vaguely and generally referenced the prior surgery in his September 1994 letter. Finally, a finding that appellee knowingly made false statements in his letters to Dr. Kittle is inconsistent with appellee's subsequent referral to Dr. Schrader — Why would appellee, knowing that he had made a false report concerning his treatment of Bear, then refer Bear to a new doctor who might discover such misrepresentation? In sum, the Board has failed to show that the court of common pleas abused its discretion in holding that a violation of R.C. 4741.22(V) was not supported by reliable, probative, and substantial evidence.
Likewise, we reject the Board's contention that it properly found that appellee's conduct was grossly incompetent and, therefore, warranted sanction under R.C. 4741.22(R). According to the Board, even if the April 1994 letter had been sent by mistake, the mistake was directly attributable to appellee's incompetent method of generating such letters. The Board further contends that the making of a false report, even absent evidence that appellee knew it was false, is sufficient to constitute gross negligence under the statute. Again, we find the Board's arguments unpersuasive.
First, there was no finding by the hearing examiner or the Board that appellee's method of generating courtesy letters to referring physicians was grossly incompetent. Nor was there anything in the record suggesting that appellee's procedures in this regard were unique or contrary to accepted practices in the profession.
Second, given the lack of a finding and supporting evidence that appellee's procedure for generating letters was grossly incompetent, we agree with the holding of the common pleas court that a violation under R.C. 4741.22(R) cannot be maintained absent evidence that appellee knew the letter was false. To hold otherwise would render the specific prohibition against knowingly making false reports found in R.C. 4741.22(V) meaningless. Nothing in the case law cited by the Board is to the contrary. For example, in Kaufman v. Ohio Veterinary Med. Bd. (1990),69 Ohio App.3d 79, the case primarily relied upon by the Board, the court upheld a finding of gross incompetence based, in part, on the veterinarian's conduct of providing false information concerning the treatment and condition of a pet to its owners. Significantly, however, there was no contention that the misrepresentations were generated by mistake and the evidence overwhelmingly indicated that such misrepresentations were knowingly and intentionally made. Such is not the case here. Consequently, a finding that appellee violated R.C.4741.22(R) is not supported by this record.
Finally, the Board contends that appellee waived all evidentiary and most legal challenges to the Board's order because appellee failed to file written objections to the hearing examiner's report with the Board as authorized under R.C. 119.09. We find, however, that the Board's contention is not supported by the language of R.C. 119.09 or case law.
R.C. 119.09, governing adjudicatory hearings by an administrative agency, provides that a "party may, within ten days of receipt of such copy of such written report and recommendation [of the hearing examiner], file with the agency written objections to the report and recommendation, which objections shall be considered by the agency before approving, modifying, or disapproving the recommendation." Nothing in the language of R.C. 119.09 or in 119.12, which governs appeals to the court of common pleas, indicates that a party must file objections or that failure to do so operates as a waiver of certain issues on appeal.
Likewise, while the Board cites several cases for the general proposition that a party waives new issues never raised at the administrative agency level, see, e.g., Morgan v. Girard City SchoolDist. Bd. of Edn. (1993), 90 Ohio App.3d 627, 631, the Board has cited no cases, and we have found none, standing for the proposition that failure to file written objections to a hearing examiner's report operates as a waiver of matters otherwise litigated during the evidentiary hearing held under R.C. 119.09. Furthermore, addressing similarly permissive language in the prior version of Civ.R. 53, which authorized the filing of objections to referee reports at the trial court level, the Ohio Supreme Court specifically held that failure to file such objections did not constitute a waiver for appellate review of the findings or recommendations made by the referee and adopted by a trial court. SeeNormandy Place Assoc. v. Beyer (1982), 2 Ohio St.3d 102, 105 ("In view of the permissive construction customarily afforded the word `may' and in the absence of a clear warning of the consequences entailed in the failure to file objections, this court is reluctant to deprive a party of such a substantial right as the right of appeal"). We find the analysis of Normandy Place to be equally applicable here.
For the foregoing reasons, the Board's two assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
 ______________ LAZARUS, J.
BROWN and KENNEDY, JJ., concur.
[1] The relevant provisions of R.C. 4741.22 provide that the Board may, inter alia, reprimand, suspend, or revoke the license of a veterinarian who:
 (A) In the conduct of the person's practice does not conform to the rules of the board governing proper, humane, sanitary, and hygienic methods to be used in the care and treatment of animals:
* * *
(R) Is guilty of gross incompetence;
* * *
 (V) In the person's capacity as a veterinarian * * * makes or files a report, health certificate, vaccination certificate, or other document that the person knows is false or negligently or intentionally fails to file a report or record required by any applicable state or federal law[.]"
Ohio Adm. Code 4741-1-02(A) provides that appellant may take disciplinary action against a veterinarian for "[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established."
[2] The Board makes no argument that the September 1994 letter's description of the meniscus repair was, itself, a knowingly false statement by appellee.