Sherrod, Appellee, *v.* Landon, Admx., Appellant.

[Cite as Sherrod v. Landon, 7 Ohio App. 2d 254.]

(No. 7392—Decided December 10, 1963.)

*Mr. Victor A. Ketcham,* for appellee.
*Mr. John C. Wheatley,* for appellant.

Troop, J. Plaintiff in the trial court, Charles Sherrod, recovered the sum of $2,500 against the defendant, Agnes Landon, as administratrix of the estate of Grace Mansbarger, deceased, by way of judgment entered by the court upon a jury verdict. The recovery was allowed for services claimed to have been rendered by the plaintiff to the defendant's decedent during her lifetime. It is from the judgment of the trial court that this appeal is taken on questions of law.

Pleadings and testimony, some of it agreed by counsel to be accurate, indicate that Grace Mansbarger died January 3, 1961, having been preceded in death by her husband, known throughout the record as "Hob." During her lifetime, Grace Mansbarger owned real estate fronting upon Buckeye Lake. Agnes Landon was appointed executrix of the estate of Grace

Mansbarger, on February 28, 1961, and the plaintiff filed a claim in writing, for services rendered the decedent, within four months of the appointment of the executrix, on May 17, 1961, which claim was formally rejected May 19, 1961.

The controversial issues arise from the allegations in plaintiff's petition, paragraphs numbered 2 and 3. Briefly, plaintiff alleges that he rendered services from time to time, at the request of Grace Mansbarger, or with her knowledge and acquiescence, such services as performed were work and labor in construction and maintenance of her real estate covering a period including 1955 to the date of her death, the reasonable value of which was $5,412. An answer on behalf of defendant denying these basic allegations made up the issues to be tried.

Four errors are assigned as the basis of defendant's appeal. The first error upon which defendant relies is with respect to a ruling of the trial court upon defendant's motion to require the plaintiff to make his petition definite and certain. If the trial court had sustained rather than overruled defendant's motion, the haphazard development of testimony at the time of trial might have been avoided, but be that as it may, a trial court has a wide range of discretion in ruling upon motions and it appears that the rulings in the instant case were within the purview of that discretion. The first assignment of error is not well taken.

Second, appellant urges that the trial court erred in admitting, over objection, evidence of the provisions of decedent's will. The question to which objection was made is as follows:

"What was said in the reading of the will?" And the answer follows:

"The reading of the will stated that the property and—for the whole estate would be left to Agnes Landon, providing that she paid all of her debts and paid all of her bills. That's stated right in the will."

Counsel then moved that the answer be stricken and his objection was overruled.

Case law and text material dealing with the admissibility of evidence of this kind is extremely meager. General propositions are available, but a case involving the very limited question concerning the propriety of such a reference to an estate, as con-

tained in the quoted answer, has not been revealed by research or suggested by citations of counsel.

An extremely broad suggestion is made by the text writers in 20 American Jurisprudence 250, Section 259, to the effect that rich and poor stand alike in courts of justice and that neither the wealth of one nor the poverty of the other is to be permitted to affect the administration of the law. The annotation in 65 A. L. R. 2d 945, contains material moving much more directly toward the appraisal of the bit of testimony before us here. The title of the section is suggestive, "Admissibility of evidence of value or extent of decedent's estate in action against estate for reasonable value of services furnished decedent," and the content approves the general rule excluding evidence of the pecuniary worth of a decedent in an action such as this. The exception appears in the cases in which the service performed related to the management of the property in the estate during the life of the decedent. The admission into evidence of testimony concerning the extent of the property in the estate is regarded as justifiable in such cases.

Application of the general rule excluding testimony concerning the value or extent of an estate would seem to be accepted by Ohio courts. The basic proposition appears in *Saffin* v. *Thomas, Exr.* (1894), 8 C. C. 253, as follows:

"2. In an action by a plaintiff to recover, on a quantum meruit the value of services rendered by him to the defendant, it would seem that evidence of the pecuniary condition of the defendant, and that he was a very wealthy man, is not competent. The value of the services, as a general rule, is to be ascertained and fixed by the usual price paid for like services at the time and place of performance."

In the instant case the objectionable testimony is certainly not identical to that described in the first part of the quoted syllabus. There is, however, no escape from the limiting effect of the proposition contained in the last sentence. Plaintiff herein claimed to have rendered services upon the real estate of the decedent and so alleged in his petition. Such an allegation was necessary. Testimony directed to the quality and quantity of the services rendered was clearly admissible, but any testimony beyond that area of unmistakable relevancy moves

into a gray area of doubtful pertinency. Any testimony concerning the extent of the property in the estate, and to the beneficiary of the "whole" of it, under the rule, produces an inescapable emphasis that could well have presented to the jury a concept of a case of the plaintiff, a poor working man, as opposed to the recipient of a windfall, instead of an issue arising out of a claim for the reasonable value of the services performed for which the decedent, at least by implication, agreed to pay and from which services she benefited.

Following the rigidity reflected in the general propositions reviewed, it is necessary to conclude that the reference to the will of the decedent and the beneficiary under it, as above quoted, was designed to influence the jury and had a prejudicial effect, and was, therefore, inadmissible. Defendant's second assignment of error is well taken. (See, also, 58 Ohio Jurisprudence 2d 56, part of Section 47, text material and footnotes.)

The third assignment of error amounts to a request to review the weight of the evidence since it suggests that the court erred in overruling defendant's motion for a directed verdict made at the conclusion of all the evidence. While not entirely necessary, since the second assignment of error was sustained, some purpose might be served in such a survey. 58 Ohio Jurisprudence 2d 52, Section 46, suggests the burden of proof resting upon a plaintiff in a quasi-contractual or quantum meruit action. Briefly, the points to be sustained are:

1. Sufficient facts adduced from which a promise, implied in fact or law, to pay for the services may be found.

2. The character and extent of the services.

3. The reasonableness of the charges.

4. Show not only that the rate charged was reasonable but also that the time consumed was reasonable.

There seems to be evidence to prove that there was, at least, a pseudo promise to pay. Although characterized by vagueness, it appears from the testimony that Grace Mansbarger had said on several occasions that the plaintiff would be taken care of. It appears that the services performed consisted largely of labor with a touch of some skill here and there so that the character of the labor might be assumed, but a conclusion by the jury as to the extent of the work done would be

unadulterated surmise. Even the testimony of plaintiff's witnesses consists of the vaguest of generalities. For example, Lee Sherrod, son of the plaintiff, said he saw his father at work "a lot of times" and that he "seen him working on the docks," but added, "exactly the dates * * * I'm not familiar." Thelma Williams said, "I seen him do quite a few jobs there." Friedlinghaus said, "He was working on a roof of one of the cottages over there." And then he adds that he left to go fishing and when they returned "he was still working." Not a hint as to the number of hours involved appears. Whether the fishing, in the interval between observations of the plaintiff at work, consumed fifteen minutes, all day, or a week is not suggested. From the testimony contained in the record, the *extent* of the services could only be concluded by the jury from the wildest of guesses. All the jury knew was that over a period of approximately six years service was rendered.

Nothing appears of record as to the rate charged or the hours worked. It appears in the record that an attempt was made to introduce evidence, through testimony of the plaintiff, as to a rate and the estimated hours spent, but objection was made by opposing counsel. It seems that the objection was sustained because counsel then proffered for the record an answer the plaintiff would have made indicating a rate charged of $2 an hour and the amount of time he estimated had been spent, including transportation to and from Columbus. These facts are not in the record and were not before the jury. Evidence as to the reasonableness of the $2-an-hour rate might have been unnecessary if it is presumed the work performed was of the type within the range of experience of the jurors. (*Ortman, Exr.,* v. *Ortman* [1934], 17 Ohio Law Abs. 525.) The task is for the jury most commonly, however, where the labor is that of the domestic variety. (*Hossler, Exr.,* v. *Trump* [1900], 62 Ohio St. 139.) It is possible that if the services involve an element of skill a different burden is present that the plaintiff must carry. 58 Ohio Jurisprudence 2d 59, Section 49, and footnote 6.

But a calculation is impossible if there is no evidence as to time. Without evidence as to time, and an associated rate, before them, the jury could only guess. In the *Hossler case, supra, at*

page 140, is an example of a reasonable method of presenting a claim based upon the common counts.

This case contains evidence comparable to that which must have been in the record before this court in *Curry* v. *Bd. of Commrs. of Franklin County* (1939), 135 Ohio St. 435. The Supreme Court said that the *Hossler case, supra,* provided the law for the case, although the case before them was a negligence action, and added, at page 437:

"* * * but unfortunately the record contains no evidence whatsoever as to the extent of the services performed by the plaintiff's wife. * * *"

And there follows a quotation of the observation of this court, as follows:

"* * * 'there was the very general statement that she took care of the chickens, but the evidence is silent as to whether it was two or two hundred. There is nothing at all as to the age or kind or what amount of attention was given; the same is true as to the garden. The only statement in the evidence is she helped in the gardening, but no other details. She also helped with the milking. There is no evidence as to the number of cows or how many she milked. Under this state of the record the jury could no nothing more than guess.' "

This jury had no evidence before it as to rate or time. The other evidence before it was about as definite as that in the *Curry case, supra,* and the observations of this court in that case are equally appropriate here. Defendant's third assignment of error is well taken.

It is doubtful if the fourth error assigned could be regarded as prejudicial in view of other directions contained in the charge, and it is, therefore, overruled.

For other reasons indicated herein, the judgment of the trial court is reversed and the cause remanded for further proceeding according to law.

*Judgment reversed.*

DUFFY, P. J., and DUFFEY, J., concur.