DOUGLAS BIGELOW CHEVROLET, INC. et al., Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee.

[Cite as *Douglas Bigelow Chevrolet, Inc. v. Gen. Motors Corp.* (2000), 138 Ohio App.3d 841.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–1068.

Decided Aug. 24, 2000.

*Morganstern, MacAdams & DeVito Co., L.P.A., Stanley J. Morganstern* and *Christopher M. DeVito,* for appellant, Douglas Bigelow Chevrolet, Inc.

*Whann & Associates, Inc.,* and *Jay F. McKirahan,* for appellant, Ohio Automobile Dealers Association.

*Jones, Day, Reavis & Pogue, Jeffrey J. Jones* and *Douglas M. Mansfield; L. Joseph Lines III,* for appellee.

PEGGY BRYANT, Judge.

Appellants, Douglas Bigelow Chevrolet, Inc. and its proprietor Douglas Bigelow ("Bigelow"), Progressive Chevrolet and its proprietor Dan Sanders ("Progressive"), and Ewing Motors and its proprietor David Ewing ("Ewing"), appeal from a judgment of the Franklin County Court of Common Pleas affirming the decision of the Motor Vehicle Dealers Board ("MVDB") to dismiss appellants' protest to the proposal of appellee, General Motors Corporation ("GM"), to relocate Auto World Chevrolet of North Canton ("Auto World").

By letters dated January 6, 1997, GM, through its Chevrolet Motor Division, notified appellants of GM's intent to relocate Auto World's new motor vehicle dealership from its existing location at 407 North Main Street in North Canton, Ohio, to a new location almost two miles away at 7061–7179 Sunset Strip Northwest, North Canton, Ohio. By letters dated January 14, 1997 and January 16, 1997, appellants filed protests to the proposed relocation with the MVDB. R.C. 4517.50(A). The MVDB appointed a hearing officer pursuant to R.C. 4517.57, and the protests were set for a hearing. The parties engaged in

extensive discovery and presented voluminous evidence and testimony to the hearing officer at a hearing beginning on November 10, 1997. On June 5, 1998, the hearing officer recommended that the MVDB dismiss appellants' protests and allow Auto World to relocate.

On July 10, 1998, the MVDB notified all parties that it had declined to further deliberate the matter and, pursuant to the automatic adoption provision in R.C. 4517.58, the recommendation to dismiss appellants' protests was adopted. On July 22, 1998, appellants initiated an appeal under R.C. 119.12 to the Franklin County Court of Common Pleas. The common pleas court affirmed the order of the MVDB, finding it to be supported by reliable, probative, and substantial evidence and in accordance with law. Appellants appeal, assigning the following errors:

"I. The common pleas court erred by adopting the decision of the board of motor vehicles which failed to apply the relevant market area standard requirement of R.C. § 4517.51 and § 4517.01(DD).

"II. The common pleas court abused its discretion by determining that the administrative agency's decision was supported by reliable, probative, and substantiated [sic] evidence in accordance with law."

■ Appellants' appeal is governed by R.C. 119.12, which authorizes a common pleas court to affirm an order of an administrative agency if "it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." On appeal to this court, our review determines whether the common pleas court abused its discretion in finding the MVDB's decision to be supported by reliable, probative, and substantial evidence. *Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc.* (1997), 118 Ohio App.3d 470, 483, 693 N.E.2d 317, 325–326. Our review of whether an agency's order is in accordance with law is plenary. *Id.; Bob Daniels Buick Co. v. Gen. Motors Corp.* (Oct. 13, 1998), Franklin App. No. 97AP–1701, unreported, 1998 WL 720018.

R.C. 4517.50 provides that before a franchisor such as GM may relocate an existing new motor vehicle dealer, it first must give written notice of such intent to each franchisee of the same line-make of vehicle in the relevant market area ("RMA"), an area within a ten-mile radius from the site of the proposed relocated existing dealer. See R.C. 4517.50(A) and 4517.01(DD). The franchisor may not relocate the dealer if the MVDB determines that good cause exists for not permitting the dealer to relocate. R.C. 4517.50(B). The franchisor has the burden to establish that good cause exists to relocate a dealer. R.C. 4517.57(C).

In determining whether good cause exists, R.C. 4517.51 requires the MVDB to consider the existing circumstances, which include but are not limited to the following:

"(A) The effect of an additional or relocated dealer upon the existing new motor vehicle dealer of the same line-make in the relevant market area to be served by the additional franchisee or relocated dealer;

"(B) Whether it is injurious or beneficial to the public interest for the dealer to be established or relocated;

"(C) Whether the franchisees of the same line-make in the relevant market area are:

"(1) Providing adequate competition and convenient consumer care for the motor vehicles of the same line-make in the relevant market area, which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel;

"(2) Providing adequate market penetration and representation.

"(D) Whether the franchisor has complied with the requirements of this chapter."

Appellants' first assignment of error contends that, in considering whether the same line-make dealers in the RMA were providing adequate competition and market penetration in the RMA, the MVDB misapplied the RMA and instead improperly focused its attention on a smaller area inside the RMA, labeled as Area of Geographic Sales and Service Advantage 40, AGSSA 40. Their second assignment of error asserts that the decision of the MVDB is not supported by the requisite evidence. Because the two assignments of error are interrelated, we address them jointly.

Chevrolet assigns each Chevrolet dealer in a multiple dealer area, such as Canton, an AGSSA. Appellants point out that in several of the findings of fact, the hearing officer considered AGSSA 40 and the performance within that area, not the entire RMA. Indeed, most of the testimony from GM's expert witness, on which the hearing officer relied, focused on AGSSA 40 as a distinct portion of the RMA. Nonetheless, in his conclusions of law, the hearing officer expressly determined that in a "significant portion" of the RMA, the existing same line-make dealers were not providing (1) adequate competition and convenient customer care, or (2) adequate market penetration and representation. See R.C. 4517.50(C).

The common pleas court affirmed, determining that an analysis premised on a portion of the RMA was consistent with this court's decision in *Ganley, Inc. v. Ohio Motor Vehicle Dealers Bd.* (Sept. 29, 1994), Franklin App. No. 93AP–1646,

unreported, 1994 WL 530307. While the expert in *Ganley* utilized three portions of the RMA at issue there, labeled as Statistical Observation Areas, or SOA's, the three SOA's made up the entire RMA. By analyzing the three SOA's, the expert and the MVDB necessarily considered the entire RMA, even though it was divided into three different areas for analytical purposes. *Ganley,* however, does not support the hearing officer's decision to accept and rely on testimony concerning a small portion of the RMA rather than the entire RMA. Accordingly, the nature of the testimony of GM's expert, on which the hearing officer relied, is crucial to determining whether the hearing officer complied with R.C. 4517.51 in reaching his decision to dismiss appellants' protests.

The conclusions drawn by GM's expert witness were based on the AGSSA 40, not the entire RMA. Identifying AGSSA 40 as a plot within the RMA that was not doing as well as the rest of the RMA, GM's expert only tangentially addressed the entire RMA by concluding that adequate representation could never be achieved in an RMA where any AGSSA was performing poorly. He testified that he had numbers to analyze the entire RMA, but he chose not to do so. Other evidence, however, showed that the RMA was achieving better market penetration than the AGSSA 40, exceeded expected penetration rates in 1994 and 1995, and was only slightly below the expected rates in 1996 and 1997.

As a result, even though the hearing officer concluded that the existing dealers were not providing adequate market penetration and competition in a significant portion of the RMA, (1) the expert on which the hearing officer relied failed to testify to penetration or competition except in AGSSA 40, and (2) the evidence does not indicate AGSSA is a significant portion of the RMA by geography or population. Indeed, an exhibit attached to GM's expert witness's report indicates that the population of the RMA is concentrated in the southern portion of the RMA, below AGSSA 40, with the remaining spread evenly throughout the rest of the RMA, including AGSSA 40.

When interpreting a statute, a court must begin its analysis by examining the statute's express terms. *State ex rel. Cuyahoga Cty. v. State Personnel Bd. of Review* (1998), 82 Ohio St.3d 496, 498, 696 N.E.2d 1054, 1055–1056. If "the statute conveys a meaning which is clear, unequivocal and definite * * * the interpretative effort is at an end, and the statute must be applied accordingly." *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. Simply stated, if the language in the statute clearly expresses the legislative intent, then " '[a court] need look no further.' " *Id.* at 106, 304 N.E.2d at 381, quoting *Katz v. Ohio Dept. of Liquor Control* (1957), 166 Ohio St. 229, 231, 2 O.O.2d 54, 55, 141 N.E.2d 294, 296. "Courts must give effect to the words of a statute and may not modify an unambiguous statute by deleting

words used or inserting words not used." *State v. Waddell* (1995), 71 Ohio St.3d 630, 631, 646 N.E.2d 821, 822.

R.C. 4517.51 sets forth certain factors that a court must take into consideration before granting a relocation of a dealership. Among them, R.C. 4517.51(C)(1) and (2) require an analysis to determine whether the dealers in the RMA are providing adequate competition, consumer care, market penetration, and representation in the RMA. The statute clearly requires a consideration of the dealers in the RMA and it cannot be read to permit an analysis of only a small portion of the RMA.

■ Given the foregoing, the hearing officer's conclusions are not supported by the evidence. While the RMA may be broken down into smaller areas for analytical purposes, the RMA, and not simply one small portion of it, must be considered. Cf. *Ganley, supra; Joe O'Brien Chevrolet, supra,* at 476 fn. 2, 693 N.E.2d at 321 fn. 2 (determining that RMA is the entire ten-mile radius around the relocation site, not some smaller portion of that area); *Champion Motorcycles, Inc. v. New Motor Vehicle Bd.* (Cal.App.1988), 200 Cal.App.3d 819, 821, 246 Cal.Rptr. 325, 326 (noting that RMA is entire ten-mile radius for purposes of who may protest a new or relocated dealership). Moreover, to adopt the rationale of GM's expert, that the deficient penetration in AGSSA 40 necessarily means the penetration in the RMA is inadequate, would eviscerate the provisions of R.C. 4517.51(C) requiring consideration of the RMA. Under GM's rationale, that requirement arguably would be met by any deficiency in a segment of the RMA. The net result of applying that argument, in this case, was to be sidetracked from considering the dealers in the RMA as a whole, as required by R.C. 4517.51(C).

Accordingly, the common pleas court erred in finding the hearing officer's findings and conclusions to be supported by substantive, reliable and probative evidence. While the hearing officer found that other factors in R.C. 4517.51 in support of relocation were established, we cannot determine to what degree the R.C. 4517.51(C) factors of penetration, competition, and customer service, not analyzed for the RMA, weighed in the hearing officer's decision to grant relocation. The hearing officer thus must reconsider the evidence, focusing on the R.C. 4517.51 factors as they relate to the RMA, not just AGSSA 40.

At the same time, the hearing officer may also reconsider his finding that the same line-make dealers were not providing adequate customer service, as the evidence contains customer satisfaction surveys. For example, Auto World's own exhibits include Chevrolet customer satisfaction surveys in which Auto World ranked thirty-ninth of one hundred three dealerships in 1993, sixty-second in 1994, and thirty-sixth in 1995. Progressive ranked twentieth in 1993, nineteenth

in 1994, and twenty-fourth in 1995. Clearly, Progressive was actually providing better customer service as measured by Chevrolet's own customer surveys. In the same survey, Bigelow ranked ninetieth in 1993, twenty-fifth in 1994, and fourteenth in 1995, and Ewing ranked ninety-first, thirty-second, and fifty-eighth in the same years. Because those findings suggest adequate customer service among two, if not three of the appellants, the hearing officer's findings of inadequate customer service are questionable.

In the final analysis, the hearing officer found deficiencies in the R.C. 4517.51 factors in a significant portion of the RMA, but in doing so relied on GM's expert, who testified to only a small portion of the RMA contained in AGSSA 40. Because evidence regarding penetration, competition, and customer care in AGSSA 40 is not a sufficient basis to support findings regarding the RMA, or a significant portion thereof, the hearing officer's decision is not supported by substantial, reliable, and probative evidence.

Accordingly, appellants' first and second assignments of error are sustained to the extent indicated. The judgment of the Franklin County Court of Common Pleas is reversed and this matter is remanded to the common pleas court with instructions to return the matter to the MVDB to redetermine whether good cause exists for the proposed relocation.

*Judgment reversed*
*and cause remanded with instructions.*

BROWN and MCCORMAC, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.