OPINION
{¶ 1} Appellants, Douglas Bigelow Chevrolet, Inc. and its proprietor Douglas Bigelow ("Bigelow"), Ewing Motors and its proprietor David Ewing ("Ewing"), and Progressive Chevrolet, Inc. and its proprietor Daniel Sanders ("Progressive"), appeal from a judgment of the Franklin County Court of Common Pleas affirming the decision of the Ohio Motor Vehicle Dealers Board ("MVDB") to dismiss appellants' protest to the proposal of appellee, General Motors Corporation ("GM"), to relocate Auto World Chevrolet of North Canton ("Auto World"). The matter underlying this administrative appeal was first addressed by this court in Douglas Bigelow Chevrolet, Inc. v. General Motors Corp. (2000),138 Ohio App.3d 841, dismissed, appeal not allowed, 90 Ohio St.3d 1495
("Douglas Bigelow Chevrolet I"). Because we find no reversible error, we affirm the judgment of the common pleas court.
{¶ 2} As observed in Douglas Bigelow Chevrolet I:
R.C. 4517.50 provides that before a franchisor such as GM may relocate an existing new motor vehicle dealer, it first must give written notice of such intent to each franchisee of the same line-make of vehicle in the relevant market area ("RMA"), an area within a ten-mile radius from the site of the proposed relocated existing dealer. See R.C. 4517.50(A) and4517.01(DD). The franchisor may not relocate the dealer if the MVDB determines that good cause exists for not permitting the dealer to relocate. R.C. 4517.50(B). The franchisor has the burden to establish that good cause exists to relocate a dealer. R.C. 4517.57(C).
Id. at 843.
{¶ 3} Here, appellants contend GM's proposed relocation of Auto World to another site, approximately two miles away from its present location, will have a significant negative impact on appellants. Furthermore, appellants also contend GM has planned to provide Auto World with substantial assistance, thereby providing Auto World with a competitive advantage. Accordingly, given these circumstances, appellants claim GM failed to establish good cause to relocate Auto World as required by R.C. 4517.57(C), and, as a consequence, the trial court erred in affirming the MVDB's denial of appellants' protest.
{¶ 4} For its part, GM argues Auto World is presently housed in an outmoded and poorly configured facility that results in impaired profitability and customer service. GM contends relocation to a more state-of-the-art facility would be beneficial to Auto World. Furthermore, GM argues the proposed relocation also would provide improved visibility and brand awareness for Chevrolet and therefore would improve competition against other brands. According to GM, the anticipated improved visibility and brand awareness that would result from the proposed relocation of Auto World would benefit appellants, not adversely affect them, and therefore good cause exists to relocate Auto World.
{¶ 5} In Douglas Bigelow Chevrolet I, because the common pleas court erred in finding the MVDB's hearing officer's findings and conclusions, which determined good cause existed, were supported by substantive, reliable and probative evidence, this court reversed the judgment of the common pleas court. Id. at 847. The Douglas Bigelow Chevrolet I court also remanded the matter to the common pleas court with instructions "to return the matter to the MVDB to redetermine whether good cause exists for the proposed relocation." Id.
{¶ 6} After Douglas Bigelow Chevrolet I was rendered, GM moved for reconsideration pursuant to App.R. 26(A). Because GM's motion failed to raise an obvious error or a matter not considered in Douglas Bigelow Chevrolet I, this court overruled GM's motion for reconsideration.
{¶ 7} After receiving this case on remand, the common pleas court subsequently remanded the matter to the MVDB as instructed by Douglas Bigelow Chevrolet I. Because the hearing officer that initially considered the matter ceased serving as a hearing examiner prior to remand of the matter, MVDB selected a different hearing officer. See November 28, 2001 Report and Recommendation ("Report and Recommendation"), at 1. This second hearing officer denied appellants' request to introduce new evidence; however, the second hearing officer did permit oral argument and briefing concerning the matter.
{¶ 8} In the "Report and Recommendation" filed on November 28, 2001, the second hearing officer found GM had demonstrated good cause and recommended that appellants' protest be denied. Pursuant to the automatic adoption provision of R.C. 4517.58, the MVDB adopted and approved the second hearing officer's report and recommendation.
{¶ 9} Pursuant to R.C. 119.12, on January 10, 2002, appellants appealed the MVDB's decision to the Franklin County Court of Common Pleas. Finding the MVDB's decision was supported by reliable, probative and substantial evidence, on October 1, 2002, the common pleas court affirmed the MVDB's decision that denied appellants' protest.
{¶ 10} Appellants timely appeal the common pleas court's October 1, 2002 judgment and assign the following errors:
1. The court of common pleas erred to the prejudice of the appellants by affirming the decision of the OMVDB where the OMVDB's hearing examiner violated the law of the case doctrine.
2. The court of common pleas erred to the prejudice of the appellants by affirming the decision of the OMVDB where the OMVDB's hearing examiner failed to conduct a new hearing and/or receive new evidence.
3. The court of common pleas erred to the prejudice of the appellants by affirming the decision of the OMVDB where the OMVDB's hearing examiner's recommendation that good cause existed to permit a relocation of the auto world dealership was based on insufficient evidence.
{¶ 11} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275,280.
{¶ 12} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra, at 111.
{¶ 13} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied,67 Ohio St.3d 1439. In Pons, the Ohio Supreme Court noted:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. See, also, Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div. (Sept. 24, 1992), Franklin App. No. 91AP-1493, motion to certify overruled, 66 Ohio St.3d 1459 ("the court of appeals asks whether there was any reasonable basis for the decision of the administrative agency. Hence, the court of appeals will only reverse the decision of the agency in this context if it was clearly wrong").
{¶ 14} An appellate court does however have plenary review of purely legal questions. Steinfels v. Ohio Dept. of Commerce, Div. Of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999),84 Ohio St.3d 1488; McGee v. Ohio State Bd. of Psychology (1993),82 Ohio App.3d 301, 305, citing Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus, rehearing denied, 63 Ohio St.3d 1459, and In re Raymundo (1990), 67 Ohio App.3d 262, 265, jurisdictional motion overruled, 53 Ohio St.3d 718.
{¶ 15} Appellants' first assignment of error asserts the common pleas court erred by affirming the MVDB's decision because the MVDB's hearing examiner violated the law of the case doctrine as stated in Douglas Bigelow Chevrolet I.
{¶ 16} Under the "law of the case" doctrine, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. See, also, Pipe Fitters Union Local No. 392 v. Kokosing Constr. Co., Inc. (1998), 81 Ohio St.3d 214, 218, reconsideration denied,81 Ohio St.3d 1517, quoting Nolan, at 3 (noting the Ohio Supreme Court has historically recognized the "law of the case" doctrine). The "law of the case" doctrine "is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Nolan, at 3. The "law of the case" doctrine, however, "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." Nolan, at 3, citing Gohman v. St. Bernard (1924), 111 Ohio St. 726,730-731, overruled in part on other grounds, New York Life Ins. Co. v. Hosbrook (1935), 130 Ohio St. 101, paragraph two of the syllabus.
{¶ 17} Here, appellants construe Douglas Bigelow Chevrolet as concluding the evidence in the record is insufficient to support a finding of "good cause." Relying on this construal of Douglas Bigelow Chevrolet I, appellants reason both the MVDB and the common pleas court therefore erred by denying appellants' protest because the MVDB, through its second hearing officer, failed to admit additional evidence upon remand.
{¶ 18} In Douglas Bigelow Chevrolet I, at 846, this court stated:
* * * While the hearing officer found that other factors in R.C. 4517.51
in support of relocation were established, we cannot determine to what degree the R.C. 4517.51(C) factors of penetration, competition, and customer service, not analyzed for the RMA, weighed in the hearing officer's decision to grant relocation. The hearing officer thus must reconsider the evidence, focusing on the R.C. 4517.51 factors as they relate to the RMA, not just AGSSA 40.
(Emphasis added.)
{¶ 19} The Douglas Bigelow Chevrolet I court further noted:
In the final analysis, the hearing officer found deficiencies in the R.C. 4517.51 factors in a significant portion of the RMA, but in doing so relied on GM's expert, who testified to only a small portion of the RMA contained in AGSSA 40 [Area of Geographic Sales and Service Advantage 40, a smaller area inside the RMA]. Because evidence regarding penetration, competition, and customer care in AGSSA 40 is not a sufficient basis to support findings regarding the RMA, or a significant portion thereof, the hearing officer's decision is not supported by substantial, reliable, and probative evidence.
Id. at 847. (Emphasis added.) See, also, Judgment Entry dated September 29, 2000 (denying GM's motion for reconsideration) ("[w]hile appellee's expert may have testified to reduced sales in the areas of the relevant market area outside AGSSA 40, his opinions on which the hearing officer relied were premised on an analysis of the relevant factors of R.C. 4517.51
in the context of AGSSA 40").
{¶ 20} Thus, this court's reversal of the MVDB and the common pleas court in Douglas Bigelow Chevrolet I was based on the first hearing officer's misplaced reliance upon an expert's opinion that was not supported by evidence of substantial, reliable, and probative value and this court's uncertainty concerning the weight that was given by that hearing officer to factors of penetration, competition, and customer service, not analyzed for the RMA; this court did find the record per se constituted insufficient evidence as appellants claim.
{¶ 21} Therefore, on remand, the task presented to the MVDB was to redetermine whether good cause existed for the proposed relocation while reconsidering the evidence, focusing on the R.C. 4517.51 factors as they related to the RMA, not just AGSSA 40. Douglas Bigelow Chevrolet I, at 846, 847.
{¶ 22} Consequently, to the extent appellants construe Douglas Bigelow Chevrolet I as standing for the proposition that evidence in the record was insufficient per se to support a finding of "good cause," such a construal is inconsistent with the express language in Douglas Bigelow Chevrolet I and is incorrect.
{¶ 23} According to R.C. 4517.51:
In determining whether good cause has been established by the franchisor * * * to relocate an existing new motor vehicle dealer as provided in section 4517.50 of the Revised Code, the motor vehicle dealers board shall take into consideration the existing circumstances, including, but not limited to, all of the following:
(A) The effect of * * * [a] relocated dealer upon the existing new motor vehicle dealer of the same line-make in the relevant market area to be served by the additional franchisee or relocated dealer;
(B) Whether it is injurious or beneficial to the public interest for the dealer to be * * * relocated;
(C) Whether the franchisees of the same line-make in the relevant market area are:
(1) Providing adequate competition and convenient consumer care for the motor vehicles of the same line-make in the relevant market area, which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel;
(2) Providing adequate market penetration and representation.
(D) Whether the franchisor has complied with the requirements of this chapter.
{¶ 24} Here, after remand, the second hearing officer conducted an independent review of the evidence. Report and Recommendation, at 2. In this case, although both lay and expert witnesses testified at the initial hearing, much of the dispute concerns the testimony and opinions of two expert witnesses, Mr. James A. Anderson, GM's expert, and Dr. John P. Matthews, appellants' expert. See, e.g., Halleen Chevrolet, Inc. v. General Motors Corp. (June 28, 2001), Franklin App. No. 00AP-1454, dismissed, appeal not allowed, 93 Ohio St.3d 1459, reconsideration denied, 93 Ohio St.3d 1499, certiorari denied (2002), 535 U.S. 1078,122 S.Ct. 1961 ("[t]here will nary be a case in this area of law that does not contain contradictory evidence and testimony presented by each side on nearly every factor").
{¶ 25} In this case, following remand, the second hearing officer found the opinions of Dr. Matthews "to be unsupported by the evidence adduced at the hearing." Report and Recommendation, at ¶ 137. Furthermore, the second hearing officer found Dr. Matthews "conducted no studies to determine lost sales opportunities and did no analysis of Chevrolet's market potential." Report and Recommendation, at ¶ 132. Additionally, the second hearing examiner found Dr. Matthews' opinions "were contradicted by the objective facts in this case" and Dr. Matthews' "failure to factor population, household and registration growth into his analysis is an example of why his methodologies and his testimony are flawed." Report and Recommendation, at ¶ 133.
{¶ 26} Generally, "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466, 471.
{¶ 27} Under R.C. 4517.51(A), the MVDB must consider the effect of relocation on existing motor vehicle dealers of the same line-make in the RMA to be served by the relocated dealer.
{¶ 28} Here, in its October 1, 2002 decision and judgment entry ("Decision"), the common pleas court determined:
* * * The hearing officer considered this factor and found the effect of the relocated dealership upon existing new motor vehicle dealers of the same line-make in the RMA should be insignificant in terms of new vehicle sales, profitability, ability to compete in the marketplace and viability. The hearing officer reached this conclusion upon a review of the record as identified and described in paragraphs 69, 70, 71, 105, 106, 110-114, 118, 119, 121-123 and 128 of his November 21, 2001 Report and Recommendation. Upon review and independent consideration, the court agrees with the Hearing Officer.
Id. at 13.
{¶ 29} In paragraphs 69 to 71, the second hearing officer found that if Auto World were permitted to relocate, Auto World would move 0.8 miles closer to Progressive Chevrolet, 1.1 miles closer to Douglas Chevrolet, and 1.5 miles closer to Ewing Chevrolet-Canal Fulton. The second hearing officer also found Progressive Chevrolet, Douglas Chevrolet, and Ewing Chevrolet-Canal Fulton were in distinct markets from the North Canton market. Report and Recommendation, at ¶ 69-71.
{¶ 30} In paragraph 105, finding Mr. Anderson's methodology to be persuasive, the second hearing officer found:
Total lost opportunity to the dealers in the North Canton RMA in 1996 was * * * at least 1,718 units of lost opportunity, including 391 units from Eppy's consolidation, 374 units of registrations lost to interbrand competition, and 953 lost to in-sell. In addition, the untapped available market opportunities (1,718 potential sales) exceed Auto World's projected additional sales at the new site (211 sales) by more than eight times * * * [.]
{¶ 31} In paragraph 106, the second hearing officer found that, if Auto World were permitted to relocate, Auto World's anticipated incremental sales increase would encompass 15.9 percent of available lost opportunity within the North Canton 10-mile RMA, and this figure does not include the consolidation of Eppy Chevrolet with Ewing Chevrolet, which may result in the availability of larger opportunities. Therefore, according to the second hearing officer, there is "ample opportunity for Auto World to increase its sales without taking sales from any other Chevrolet dealer in the RMA." Report and Recommendation, at ¶ 106.
{¶ 32} The second hearing officer further found that Auto World's proposed relocation could increase sales for Chevrolet as a whole. Report and Recommendation, at ¶ 110. Furthermore, with the exception of Ewing Motors, the second hearing officer found appellants have significantly greater profits than Auto World, id. at ¶ 111, and both Douglas Chevrolet and Progressive Chevrolet "are in solid financial condition to compete in the marketplace." Id. See, also, id. at ¶ 121-122. But, see, id. at ¶ 119 (Ewing Chevrolet "is in severe financial trouble and * * * it is unlikely the dealership will survive regardless of [Auto World's] relocation"); see, also, id. at ¶ 123. Additionally, the second hearing officer also found Auto World's proposed relocation would not significantly move the dealership into appellants' markets. Id. at ¶ 112, 113, 114.
{¶ 33} Based on our review of paragraphs 69, 70, 71, 105, 106, 110, 111, 112, 113, 114, 118, 119, 121, 122, 123, 128, evidence that was cited in support, and additional evidence within the record, we do not find the second hearing officer's findings are internally inconsistent, impeached by evidence of prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. See Ohio Historical Soc., supra, at 471.
{¶ 34} Accordingly, we do not find the common pleas court abused its discretion when it found that R.C. 4517.51(A) factors weighed in favor of GM.
{¶ 35} Under R.C. 4517.51(B), the MVDB must consider whether the proposed relocation is injurious or beneficial to the public interest.
{¶ 36} Here, the common pleas court determined:
* * * Clearly, the record demonstrates a situation involving the notable and projected sustained growth of the community into which Auto World seeks to relocate. Further, the location of the proposed facility is nearby express highways and other ground arterial byways. Relocating a retail commercial facility closer and more convenient to the populous it seeks to attract serves the public interest. Moreover, the structure planned for Auto World would be more spacious, more customer accommodating, and offer a more modern and efficient facility. For these and other reasons referenced in the record by the Hearing Officer in his paragraphs 14-17, 19, 31, 35, 39, 43, 44, 54, 60, 84, 94, 108, 116 and 118, it is found that the public interest consideration factor strongly favors appellee.
Decision, 13-14.
{¶ 37} In this case, after remand, the second hearing examiner found Auto World's current location is inefficient, poorly configured, and not conducive to expansion or improvement, thereby dampening customer convenience, customer accessibility, and injuring the public interest. Report and Recommendation, at ¶ 31, 43. The second hearing examiner also found the proposed relocation site, which he determined to be more convenient and readily accessible than Auto World's present location, is located in a retail corridor that is patronized by North Canton residents, id. at ¶ 17, 19, and Auto World's current facilities would not likely remain vacant for any significant period if Auto World were permitted to relocate, id. at ¶ 15. By permitting Auto World to relocate, the second hearing officer found constraints that Auto World now experiences would be remedied and it would be in the public interest to allow Auto World to relocate to a facility that would allow for greater customer access, convenience, sales and service capabilities, and increased customer service satisfaction. Id. at ¶ 35, 39, 44, 54, 60. The second hearing examiner also found, if Auto World were permitted to relocate, Auto World anticipates hiring between 15 and 20 additional employees. Id. at ¶ 16.
{¶ 38} Additionally, the second hearing examiner found the current configuration of Chevrolet dealers in the RMA "is inadequate to properly and fully serve the entire market," Report and Recommendation, at ¶ 84, and the proposed site "is located within a broad spectrum of buyers based on income ranges." Id. at ¶ 94. The second hearing officer also found that "[w]hen competition is enhanced, prices to the consumer generally improve, resulting in a public benefit," id. at ¶ 108, and because enhanced visibility and accessibility can increase interest in a particular brand, the second hearing officer found the other Chevrolet dealers could benefit from an increase in visibility and competition. Id. at ¶ 116, 118.
{¶ 39} Based on our review of paragraphs 14, 15, 16, 17, 19, 31, 35, 39, 43, 44, 54, 60, 84, 94, 108, 116, 118, evidence that was cited in support, and additional evidence within the record, we do not find the second hearing officer's findings, with only a few exceptions, are internally inconsistent, impeached by evidence of prior inconsistent statements, rest upon improper inferences, or are otherwise unsupportable. See Ohio Historical Soc. at 471. We do determine, however, the finding in paragraph 84 that "[t]he current configuration of Chevrolet dealers in the RMA is inadequate to properly and fully serve the entire market" appears unsupported by the cited transcript references. Furthermore, upon closer inspection, the finding in paragraph 118 concerning increased performance levels among Chevrolet dealerships in Cincinnati, Ohio, after a dealer relocated pertained to dealers within AGSSA 9 and Section 1 MDA, not the RMA, as stated by the second hearing examiner.
{¶ 40} However, even if the findings in paragraphs 84 and 118 rest upon improper inferences or unsupported conclusions and therefore should have been excluded from consideration by both the MVDB and the common pleas court, we find the record contains other reliable, probative and substantial evidence that was relied upon by the MVDB and the common pleas court to support a finding that GM's proposed relocation would be beneficial to the public interest.
{¶ 41} Accordingly, absent a finding the MVDB's decision was clearly wrong, we do not find the common pleas court abused its discretion when, relying on the second hearing officer's report and recommendation, it found that R.C. 4517.51(B) factors weighed in favor of GM and relocation would be beneficial to the public interest. See, e.g., Hal Artz Lincoln-Mercury, Inc., supra ("the court of appeals asks whether there was any reasonable basis for the decision of the administrative agency. Hence, the court of appeals will only reverse the decision of the agency in this context if it was clearly wrong").
{¶ 42} Under R.C. 4517.51(C), the MVDB must consider whether same line-make franchisees are: (1) providing adequate competition and convenient consumer care in the RMA, which includes "the adequacy of motor vehicle sales and service facilities, equipment, supply of vehicle parts, and qualified sales and service personnel"; and (2) "[p]roviding adequate market penetration and representation."
{¶ 43} Here, regarding whether Chevrolet franchisees in the RMA are providing adequate competition and convenient consumer care, the common pleas court determined:
On the factor of whether existing franchisees are providing adequate competition and convenient consumer care, it is clear they are not. There can be little disagreement that customer service and satisfaction has fallen below the acceptable standard in the relevant market area. In terms of adequate competition, the record is not totally clear on this issue. The record does support the proposition that the dealers in the RMA have relatively high sales opportunities, but fail to fulfill expectations with consequential sales. Nevertheless, it is almost certain that competition is in need of stimulation and it is also likely that sales will be enhanced with the relocation of Auto World in the absence of a corresponding degradation of the ability of other dealers to sell their products and services. It must be kept in mind that Auto World seeks to relocate its facility less than two miles from where it currently exists. The record supports a finding that improved service to customers and improved competition will result from the proposed relocation.
Decision, at 14.
{¶ 44} In this case, because "the record is not totally clear," the common pleas court did not determine whether the Chevrolet franchisees in the RMA are providing adequate competition and convenient consumer care as required under R.C. 4517.51(C)(1). Rather, the common pleas court determined competition would be improved by the proposed relocation. We cannot determine, based on our independent review, the second hearing officer was clearly wrong when he concluded that franchisees of the same line-make in the RMA are not providing adequate competition and convenient consumer care. See Report and Recommendation, at ¶ 104, 144, 146; Tr. 52-53. But, see, appellants' Exhibit P; Tr. 706-708. See, also, Hal Artz Lincoln-Mercury, Inc., supra ("the court of appeals will only reverse the decision of the agency in this context if it was clearly wrong").
{¶ 45} Therefore, we do not find the common pleas court abused its discretion in affirming the second hearing examiner's legal conclusion that Chevrolet franchisees within the RMA are not providing adequate competition and convenient consumer care.
{¶ 46} Regarding whether existing franchisees are providing adequate market penetration and representation, the common pleas court found:
* * * Here, the evidence is that after the intended relocation, Auto World will be an average of approximately 8.5 miles away from appellants. The evidence also exists in the record that appellants have not successfully penetrated the market at a range of six miles. Significantly, the hearing officer directly addressed the concern of the appellate court and, consistent with the remand charge from this court, considered the evidence on the issue of penetration in the RMA. There exists substandard penetration throughout the RMA. Indeed, the evidence indicates that a significant percentage of lost Chevrolet registrations from substandard penetration were located in areas in the RMA outside of AGSSA 40.
* * * This court finds the evidence supports the hearing officer's conclusion that franchisees of the same line-make in the RMA are not providing adequate market penetration and representation and that the proposed relocation of Auto World would result in appellee being able to increase and improve penetration in the RMA.
Decision, at 15.
{¶ 47} Based on our independent review, we do not find the common pleas court abused its discretion in finding Chevrolet dealers in the RMA are not providing adequate market penetration and representation. See Report and Recommendation, at ¶ 140-146.
{¶ 48} Finally, although not directly addressed by the common pleas court, appellants' contention that GM's plan to provide assistance to Auto World will create a great sales and service disadvantage to appellants is not persuasive. See Report and Recommendation, at ¶ 51-53 (finding GM's payment for site control is pursuant to Chevrolet's normal business policy and same business policy is available to appellants if appellants decided to relocate and GM desired site control).
{¶ 49} Accordingly, having concluded the (1) "law of the case" as stated in Douglas Bigelow Chevrolet I was not violated by the MVDB or the common pleas court, and (2) the common pleas court did not abuse its discretion by affirming the MVDB's decision, appellants' first assignment of error is overruled.
{¶ 50} Appellants' second assignment of error asserts that because the second hearing examiner failed to conduct a new hearing or receive new evidence, or both, the common pleas court erred by affirming the MVDB's decision.
{¶ 51} In Douglas Bigelow Chevrolet I, this court stated that "[t]he hearing officer * * * must reconsider the evidence, focusing on the R.C. 4517.51 factors as they relate to the RMA, not just AGSSA 40." Id. at 846. (Emphasis added.) The Douglas Bigelow Chevrolet I court also remanded to the common pleas court "with instructions to return the matter to the MVDB to redetermine whether good cause exists for the proposed relocation." Id. at 847. (Emphasis added.) Thus, the Douglas Bigelow Chevrolet I court did not order the MVDB to conduct another hearing as appellants contend; rather, the Douglas Bigelow Chevrolet I court ordered the MVDB to reconsider the evidence, while focusing on the R.C. 4517.51 factors as related to the RMA, and to redetermine whether good cause exists. Therefore, to the extent appellants contend the Douglas Bigelow Chevrolet I court ordered the MVDB, on remand, to conduct a second hearing, such a contention is contrary to the express language of Douglas Bigelow Chevrolet I.
{¶ 52} Here, on remand, the second hearing examiner executed the precise Douglas Bigelow Chevrolet I mandate, namely, to reconsider the evidence and to redetermine whether good cause existed. Pursuant to Douglas Bigelow Chevrolet I, the second hearing officer was not required to conduct a second hearing and the second hearing officer's denial of appellants' motion to present additional evidence certainly was within the second hearing officer's discretionary authority. See, e.g., Sherrod v. Landon (1963), 7 Ohio App.2d 254, 255 (trial court has wide range of discretion in ruling on motions).
{¶ 53} Furthermore, appellants' contention they were denied due process because the second hearing officer did not conduct a de novo hearing is unpersuasive.
{¶ 54} In Laughlin v. Pub. Util. Comm. (1966), 6 Ohio St.2d 110,112, the Ohio Supreme Court observed that "[i]t is not essential that a person who prepares findings and recommendations in an administrative proceeding hears the evidence, if he reviews and examines the record of the proceeding."
{¶ 55} Here, the second hearing officer reviewed and examined the record of proceedings. Report and Recommendation, at 1-2. Because it is not essential for a person who prepares findings and recommendations in an administrative proceeding to hear the evidence, Laughlin, at 112, we find no due process violation. See Halleen Chevrolet, Inc., supra, relying on In re Christian Care Home of Cincinnati, Inc. (1991),74 Ohio App.3d 453, 461, and Kremer v. State Med. Bd. of Ohio (Mar. 12, 1996), Franklin App. No. 95APE09-1247 (concluding no due process violation existed when second MVDB hearing officer issued recommendations based only on a review and analysis of the record). See, also, Ritchie Photographic v. Limbach (1994), 71 Ohio St.3d 440, 442, applying Laughlin.
{¶ 56} Moreover, appellants' contention the MVDB exceeded its statutory authority under R.C. 119.09 is also unpersuasive. Pursuant to R.C. 119.09, "[i]n any adjudication hearing required by sections 119.01
to 119.13 of the Revised Code, the agency may appoint a referee or examiner to conduct the hearing." Appellants construe R.C. 119.09 as requiring the MVDB to have conducted a second hearing upon remand. We believe such an expansive interpretation of R.C. 119.01 is unwarranted based on the plain and unambiguous language of the statute. "When a statute is plain and unambiguous * * * `there is no occasion for resorting to rules of statutory interpretation.' " State v. Hurd (2000),89 Ohio St.3d 616, 618, quoting Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus. See, also, Storer v. Communications, Inc. v. Limbach (1988), 37 Ohio St.3d 193, 194.
{¶ 57} Here, R.C. 119.09 provides that in an adjudication hearing, an agency may appoint a referee or examiner to conduct a hearing. R.C. 119.09 does not provide for a second hearing on remand. To hold otherwise would be to impermissibly add, enlarge, supply, expand, extend or improve R.C. 119.09 to meet a situation not provided for. See State ex rel. Foster v. Evatt (1944), 144 Ohio St. 65, paragraphs seven and eight of the syllabus, certiorari denied (1945), 324 U.S. 878,65 S.Ct. 1026, rehearing denied, 325 U.S. 894, 65 S.Ct. 1402. See, also, Halleen Chevrolet Inc., supra (concluding that R.C. 4517.57(A) and 119.09
permit a second hearing officer who does not conduct a hearing to issue findings and recommendations to the MVDB).
{¶ 58} Accordingly, appellants' second assignment of error is overruled.
{¶ 59} Appellants' third assignment of error asserts because the MVDB's decision was based on insufficient evidence, the common pleas court erred by affirming the MVDB's decision. Specifically, appellants contend the second hearing examiner, as did the first hearing examiner, relied heavily on evidence regarding AGSSA 40, rather than the entire RMA. Therefore, because the second hearing examiner allegedly improperly relied on evidence that this court found not to be reliable, probative and substantial in Douglas Bigelow Chevrolet I, appellants argue the MVDB's decision and the common pleas court's judgment are based on insufficient evidence.
{¶ 60} Although in his Report and Recommendation, the second hearing examiner stated that in "large part" his findings of fact and conclusions of law were "the same or similar" to those of the first hearing examiner, Report and Recommendation, at 2, the second hearing examiner did conduct an independent review, id. at 2, and did make additional findings of fact that were not contained in the first hearing examiner's report. See, e.g, Report and Recommendation, at ¶ 140-146.
{¶ 61} Furthermore, we do not agree the second hearing examiner improperly relied on evidence regarding AGSSA 40. Specifically, in denying GM's motion for reconsideration after Douglas Bigelow Chevrolet I, this court observed that "[w]hile appellee's expert may have testified to reduced sales in the areas of the relevant market area outside AGSSA 40, his opinions on which the hearing officer relied were premised on an analysis of the relevant factors of R.C. 4517.51 in the context of AGSSA 40." Judgment Entry dated September 29, 2000. Thus, although GM's expert's opinions were premised on analysis of relevant factors of R.C.4517.51 in the context of AGSSA 40 as determined in Douglas Bigelow Chevrolet I, the record also contained testimony by GM's expert concerning the RMA in general, and this testimony could form a possible basis upon which the second hearing officer could rely.
{¶ 62} Based on our review of the second hearing examiner's Report and Recommendation and the record itself, we conclude the second hearing examiner did not improperly rely on testimony this court found objectionable in Douglas Bigelow Chevrolet I.
{¶ 63} Consequently, appellants' third assignment of error is not persuasive and is overruled.
{¶ 64} Accordingly, having overruled all three of appellants' assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Lazarus, J., concurs.